# Sanders v. Commonwealth.

June 19, 1942.

S. Rush Nicholson and John A. Huffaker for appellant.

Hubert Meredith, Attorney General, and Wm. F. Neill, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On the night of Sunday, April 13, 1941, between 8 and 9 o'clock, the appellant and defendant below, Jess Sanders—who was about 47 years of age—shot and killed his divorced wife, Katie Sanders, at a restaurant and beer joint operated under the name of "Post Inn" and located at 1941 West Jefferson Street in the city of Louisville. On the 25th day of same month appellant was indicted by the Jefferson County Grand Jury in which he was charged with the commission of murder; and on the 28th day of the same month he was arraigned and pleaded not guilty. His trial was then set for May 22, 1941. In the meantime he had employed as his counsel John A. Huffaker, an attorney of the Jefferson County Bar. When the court announced the setting of the case for trial, employed counsel filed his own affidavit in support of his contention for a longer period for preparation, but no supporting affidavit of defendant was filed. The attorney stated, in substance, that his fee had not been paid or secured, and that he would be engaged in some other litigation in the interim; but the extent of it, as well as the time necessary therefor, was not stated. Counsel further stated in his affidavit that one Dr. Butler, who resided in the city, "has waited on the defendant for extreme nervousness but cannot afford to appear in court unless guaranteed an attendance fee. Affiant states that said doctor, from what he is informed by the defendant, said that defendant is suffering from extreme nervousness produced by a double rupture. Affiant states that if he were granted a continuance the defendant would be able to pay him a fee sufficient to have the above doctor to appear in court and testify." He asked that the trial of the indictment be continued until the next term of court, but the court overruled the motion with the permission of the defendant to read all pertinent parts of counsel's affidavit upon his client's trial, which was done.

The Commonwealth introduced 15 witnesses, the

greater number of whom were present and saw the homicide committed. They tell the story with but little variance and what there is does not affect the substance of the narrative. As given by them it was to this effect: Defendant was present in the restaurant sitting at a table with a female companion, the two consuming some beer they had ordered. While so engaged defendant's deceased wife with a female companion entered the building and took a seat at another table some distance away. Her entry was observed by defendant, who shortly thereafter retired from the room and went to his lodging quarters across the street. He was gone some 10 minutes, when he re-entered the restaurant and went to the table where his wife was sitting with her companion and shot her 6 times in her body, from the effects of which she was immediately killed, with her body lying on the floor. Defendant again retired, which he says was only to a back part of the room, but which the witnesses said was to its outside. But whichever place it was, he reloaded his pistol and returned to the body of his wife lifting up her head with his left hand and fired two or three bullets in the head of the corpse—he saying just before the shooting and immediately upon his return with his pistol, ''You bitch, I have got you.''

It was furthermore proven and uncontradicted that shortly before the homicide the attorney representing the deceased in her divorce suit sent appellant a bill for an allowed attorney's fee, which very much enraged him, and he then declared that before he paid it he would kill his wife in whose behalf the allowance was made. He consulted a colored attorney about it to whom he also made that threat, and the attorney advised him to refrain from executing that purpose. Defendant made the same threats to other witnesses with whom he conversed before the homicide and after receiving a request to pay the allowed attorney's fee. Two women, who were in the building in which defendant's lodging quarters were located, testified that on the night just preceding the homicide he came from the restaurant to that building and obtained his pistol and told them that his wife was across the street in the restaurant and he intended to kill her. They endeavored to persuade him to desist from any such purpose, but he threatened to kill them and then returned to the restaurant, when the homicide was immediately committed. The testimony of those two witnesses is the only material evidence in the case that de-

fendant contradicted, he testifying that he carried his pistol with him to the restaurant and did not obtain it from his lodging quarters as testified to by the two women, although he had difficulty in explaining why he left the restaurant and made the visit to his lodging quarters. However, it is obvious that the fact is immaterial as to when he obtained his pistol.

Defendant was intoxicated to some extent, but not by any means to the extent of producing a maudlin condition, and there is no evidence given by the defendant, or any other witness in the case, showing that he was so bereft of reason because of intoxicants as to deprive him of ability to know right from wrong. On the contrary, the witnesses for the prosecution contradict any such theory, and which practically left defendant without any legal defense whatever for the commission of. his inexcusable deed.

He testified that on the same day of the homicide, or the day before, he met and conversed with his divorced wife and she was telling him about a boy friend who had either brought, or had promised to bring, her some flowers and which he said worried him very much. In giving his testimony as to what occurred at the time of the homicide and immediately preceding it, he was asked and answered:

"Q. She came in after you had been in there a while? A. Yes, she came in there after I had been in there.

"Q. What did you leave there for? A. I just got nervous and upset and didn't want to see her and I walked out.

"Q. Tell the jury what happened? A. I walked out and went over home and sat down awhile, and I started to put my pistol up, but I didn't put it up, I still continued to keep it in my pocket, and I went back and thought she would be gone, and I went in and I went to say something to her, but I don't know whether I said anything or not, I just lost my mind and control of myself and didn't realize what I did until too late.

"Q. Do you remember shooting her? A. I don't remember shooting her. I just remember shooting, but how many and how much I don't know."

The excuse so given by defendant is the only one

offered in extenuation of his crime, and, of course, it is obvious even to the layman that the one tendered is entirely without merit, although the court out of abundant caution submitted an instruction on the defense of insanity and of which no complaint is made.

Such are substantially the facts, and defendant's counsel in seeking a reversal of the judgment of conviction of their client argue four alleged errors committed by the court at his trial and which are: (1) The refusal of the court to grant the continuance of the trial to a later date pursuant to the motion made therefor by defendant's attorney but in which the latter did not join; (2) the admission of incompetent evidence over defendant's objection; (3) error of the court in not discharging the jury and continuing the case when a female bystander (but who the evidence does not show was or was not a witness for either the Commonwealth or defendant) fainted and was carried from the courtroom; and (4) because of improper remarks made by Commonwealth's Attorney to the jury in his closing argument. Each of them will be disposed of in the order named.

(1) That counsel's affidavit did not furnish grounds for a postponement of the trial is so obviously apparent that it requires but a brief consideration in disposing of ground (1). The absent physician witness resided in the city of Louisville and his personal attendance at the trial could be enforced through the ordinary processes of the court, and that too without the guarantee of any compensation over and above that allowed by law. Neither may the machinery of the courts be halted and the work of the court suspended in order to enable counsel to arrange for the collection of his fee. Furthermore, the testimony of the physician referred to in the affidavit of counsel was immaterial, since it furnished no defense for the commission of the crime of which defendant was accused. In addition thereto there intervened between the first time of making the motion and the date of the trial 26 days, furnishing what would appear to be ample time for preparation for the trial, and it is not contended that defendant was deprived of any witness that a postponement would have enabled him to procure. Therefore the court in permitting the affidavit of counsel to be read to the jury committed an error against the Commonwealth and in doing so favored defendant to that extent to which he was not entitled in law.

(2) The only incompetent evidence complained of under ground (2) to which our attention has been called is that the court first permitted prosecuting counsel to read the petition of the deceased wife filed by her in her divorce action against defendant, but it was later withdrawn and the jury instructed to not consider it. However, we are not by any means positively convinced that it was error to admit that evidence, since defendant's motive for the killing grew out of the divorce action and the petition was an important part of it. But whatever may be the merits of that objection, the defendant first introduced testimony concerning the divorce action and first brought that litigation into the prosecution; and when done, it is our conclusion that the attorney representing the Commonwealth had the right to show what the record disclosed about and concerning that action. Moreover, as we have seen, the court withdrew that testimony from the jury. If, however, the criticism leveled at the verdict because of this ground could be considered as in any wise meritorious, it would then require more penetrating logic than what we possess to detect its materiality, or prejudicial effect, so as to authorize a reversal of the judgment, the uncontradicted facts portraying an unmitigated murder without legal excuse. We therefore conclude that this ground is unavailable.

(3) During the trial a woman occupying a place in the audience fainted. It created some commotion for a short while, but she was removed from the courtroom and after the excitement had subsided the trial proceeded. Nothing appears as growing out of the trial to cause the fainting; nor does anything appear why the occurrence would justify the discontinuance of the trial by discharging the jury and continuing the case. The individual who became so suddenly stricken is not shown to have had any connection with the prosecution, and the circumstance appears upon the whole to be a mere straw, which is sought to be utilized in at least temporarily relieving defendant from the punishment inflicted upon him. Clearly this ground is also without merit.

(4) The alleged remarks of counsel for the Commonwealth complained of under ground (4) is nowhere contained in the record, except in the motion for a new trial. Not even that motion is made a part of the bill of exceptions; but if it were it would not serve to bring the question before this court for determination, since we have

held in what might be termed an unlimited number of cases—with none to the contrary—that in order to present such errors to this court for review the matter complained of must be contained in the bill of exceptions approved by the court, and which is the only way they may be legally certified to this court for review. Moreover, the remarks of counsel—as only appearing in the motion for a new trial—were directed to the character of punishment that should be inflicted by the jury under the practically undisputed facts in the case; and if the error so relied on was properly presented to us for determination it is made apparent that we would hold it to be nonprejudicial.

Defendant made his own bed which was indisputably done with premeditation. The peace and safety of civilized society would soon be destroyed if those who violate the criminal laws were not visited with proper retribution therefor. The law says that the jury upon the conviction of one charged with murder may affix death as the proper punishment to be inflicted. The members of that body who tried defendant so concluded, and we have been unable to find anything in the record to justify or authorize the conclusion that there was any mistake on their part in the punishment inflicted.

Wherefore for the reasons stated the judgment is affirmed.

The whole court sitting, except Judge Ratliff, who was absent.