# Grace v. Commonwealth.

May 28, 1946.

Don A. Ward and Bailey P. Wootton for appellant.

Eldon S. Dummit, Attorney General, and Guy H. Herdman, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

A jury found appellant guilty of carnally knowing a female of twelve and under sixteen years of age, KRS 435.100, inflicting the minimum penalty, five years confinement in the penitentiary. On appeal from a judgment entered in accord it is contended in brief that the court committed prejudicial errors, (1) in admitting "improper" evidence on behalf of the Commonwealth; (2) in giving improper instructions; (3) in overruling appellant's motion to direct a verdict for him at the close of the Commonwealth's and all evidence; (4) in permitting the Commonwealth's attorney to make improper argument to the jury, and lastly that the verdict was contrary to law and evidence.

We shall first dispose of ground (4). It is contended that in his closing argument the attorney referred to the prosecutrix as a "poor little feeble-minded child." In the ground in support of motion for a new trial it was alleged that the "attorney erroneously made statements in his argument which were not brought out in evidence, over the objection of defendant." Neither in the bill of exceptions nor elsewhere in the transcript do we find reference to the language attributed, nor objection to the alleged language. The bill repeats verbatim the 6th ground as above stated. In this state of the record the court cannot consider the alleged error. Alsept v. Com., 240 Ky. 395, 42 S. W. 2d 517; Sanders v. Com., 291 Ky. 216, 163 S. W. 2d 493. However, if the language was used as stated it would not constitute reversible error, since the mother of prosecutrix on examination by defense counsel, in referring to her daughter, said: "She aint got no mind; got the mind of a seven year old child." At this point, and as bearing on another phase,

we gather from a reading of the testimony of prosecutrix, she had a considerable impediment in her speech, and without doubt was a subnormal person.

Prosecutrix testified that she had for several years been in the habit of going to the home of appellant, her brother-in-law, and staying for brief periods. In fixing as near as she seemed able, the date when the charged offense was committed, she said she went to appellant's home on March 18, 1945, and stayed a long time. She does not fix the exact date, but said "He told me to tome to tend to baby so they could work in tawn field and he took me out in tawn field." There was great difficulty in bringing the witness to the point of telling what occurred in the corn field, this due to the mental condition, and her apparent reluctance, but partially to the constant objections by counsel to questions, colloquies between counsel and rulings of the court. She finally said that the act took place at "Tuddy Oller, near Billie Grace's." She makes it fairly clear that it was on her visit of March 18, but whether it was on that day or the 19th is not material. After more wrangling and attempts to get her to tell just what appellant did, she said he had intercourse with her, describing the act in different, though emphatic words. She stated that following the alleged act she became pregnant and gave birth to a baby three weeks before the trial in December 1945. When asked who was the father of the child, she unhesitatingly named appellant, saying that he was the only one with whom she had intercourse, and said he had "done it a big lot of times, out in the hills," ever since she was thirteen years old. She denied that she had ever told anyone that her brother was the father of the child, as was testified to by two witnesses appearing for the defense.

The mother testified that Eliza was fifteen years old at the time of the trial; that the girl was in the habit of going to her sister's home frequently to help with the children and work around the house, but they more frequently sent her to work in the field. She stated that the daughter, to the best of her knowledge, became pregnant after her regular monthly period in February. She testified that in October 1945 appellant asked her if the girl was pregnant and upon her affirmative reply, "he asked me whether I wanted him to take her over to his house,

and if I wanted to he would pay the doctor's bill and take the child and raise it and let the girl come back home and put the baby on a bottle.'' She introduced a letter written on October 15 addressed to her, which came, as she says, through the Scuddy post office. This letter was written from the jail, and repeated the agreement to take care of the child and pay the doctor's bill. The letter said: ''I don't think hard of you; you have got me down here and I am almost crazy over my family. My trial is set for November, and please don't keep me in here, for I will do what I told you I would; * * * think what I have done for you and then drop the case. You and Ernest come over here I want to talk to you all.'' This was signed, ''Billie Grace, Hazard, Kentucky.''

Objections were overruled to both the introduction of the letter and the statement, and it is argued that the testimony and introduction of the letter were erroneously allowed, and constituted reversible error, but counsel does not point to any authority upholding this contention.

Mrs. Wooton was positive in saying she was familiar with his writing and signature, and that both were in his handwriting. Appellant denied that he had either written the letter or made the statement, but said that he had, after talking it over with his wife, agreed for the girl to come to his home so that she would be close to a doctor. He said the mother refused to do anything for the girl, and at her later insistence his wife agreed to wait on her ''until she got down and up,'' and the mother then agreed she would help buy the clothes if ''I would take her.'' He said he never told Mrs. Wooton he was the child's father. During the trial accused was asked to and did write his name and other words contained in the letter, and apparently these were compared by the jury with the letter. These tests are not in the record. The statements and the letter, while not precisely confessions, were not self-serving, so were admissible. Hawk v. Com., 284 Ky. 217, 144 S. W. 2d 496; Hendrickson v. Com., 235 Ky. 462, 31 S. W. 2d 712.

Appellant denied that he at any time had intercourse with prosecutrix, or that she ever went to the cornfield with him to help work or for any other purpose. He had never heard of her pregnancy until his wife told him some time shortly before the child's birth. He con-

tended that on the 18th of March, the time about when it is shown the act occurred, he was in jail on a charge of being drunk. He testified that he got out of jail on the 18th but went to a friend's house, and to the Wooton home the next day to get his family. He says the prosecutrix did not go home with them; she says she did, and the father testified that the girl left her home with him on the 18th. The confusion as to his being in or out of jail on the 18th was due to the fact that the jailer said his records showed that appellant did not get out of jail until the 19th of March, although he admitted that "a man put in on a drunk charge might have went on a trip home," but he did not think that happened in appellant's case.

All this was gone into at length in effort to show that appellant could not have committed the act on the 18th, and this was the ground upon which it was sought to have the court to direct a verdict of not guilty, together with the contention that the Commonwealth did not prove that appellant was twenty-one years of age or over. Neither of these contentions is of merit. In the first place the girl did not specifically fix the date of the occurrences as March 18; that was the date she went to appellant's home, according to some testimony. If she did not go until the 19th there would be little difference in effect, since she testified in substance that the act occurred at Scuddy Hollow in the cornfield at Bill Grace's home on the occasion of her 18th of March visit. There was no election sought by appellant, but the court elected during the progress of the trial. This arose when the girl testified as to former acts, the court saying: "The jury will understand that the Commonwealth has elected to stand on the charge she first testified about." The Commonwealth did not fix the specific date in the indictment or in proof. In Williams v. Com., 277 Ky. 227, 228, 126 S. W. 2d 131, 133, the testimony was that the elected act occurred "at some point off the Mint Springs Road, * * * near the first of June," the exact date the witness was unable to give. We affirmed the judgment, as we did in Miller v. Com., 235 Ky. 182, 30 S. W. 2d 484, where the proof was that the act was committed "one afternoon in July, 1928."

The complaint that the Commonwealth failed to make a case because it was not proven that appellant

was twenty-one years of age, would have some merit except for the fact that appellant testified that he was married in 1938, and at the time of the trial was twenty-eight years of age. The facts while manifesting a sharp conflict speak for themselves and serve as a sufficient reply to the contentions that the verdict was contrary to the evidence, and that appellant was entitled to a directed verdict acquitting him.

Some four or five pages of appellant's brief are taken up in reciting what counsel conceive to have been incompetent and prejudicial questions and answers, and the contention that the Commonwealth's attorney prejudiced the rights of appellant by standing near the prosecuting witness while she was testifying, thus lending her aid and encouragement, and misleading the jury in the belief that she was not able to take care of herself. Further. that the father was called in rebuttal to testify as to the time the girl left her home, the objection being based on the fact that he had been in the court room during the trial. We do not find that there was any separation of witnesses; furthermore this evidence was in rebuttal of the testimony that the girl did not go home with appellant on the 18th of March; proper admonition as to its purpose was given, but had this been substantive evidence, it was in the court's discretion to admit it. Criminal Code, sec. 225.

The remainder of the several pages recite numerous questions and answers, and objections overruled; many of them repeated. The repetitions and confusion attendant were as we noted due to the constant objections, colloquies, and interjections by the court. We shall give only a few instances, since to incorporate all would require time and space. Exemplary, are particularly those asked the prosecuting witness in an effort to bring out facts: "Can you tell whether this happened in February or March of this year? Did it happen before the finding of this indictment, October 5, 1945? I believe you stated it happened some time in March 1945." These and others were in relation to time, which was fixed in the earlier part of her testimony. The others were as to the commission of the act, and it appears the question was asked numerous times before a response was finally had. While the questions were of a leading character, it is not difficult to conclude that the witness was a re-

luctant one, and not only had a speech impediment, but was below the standard of normalcy for a girl of her age. We are of the opinion that she might be classed as a child of tender years, so the Commonwealth was justified in doing some leading. Blankenship v. Com., 234 Ky. 531, 532, 28 S. W. 2d 774. The Civil Code of Practice sec. 595, provides that under special circumstances leading questions may be asked, if the ends of justice require it; this places the conclusion of the propriety in the discretion of the court.

Objections were also made to several questions asked the mother, such as: "Did your daughter become pregnant while going over there and staying with defendant and his wife?" and similar questions. These were somewhat leading, but not prejudicial since the mother later, without objection, fixed the time as near as could be done. We are not at all prepared to hold that any of the questions or answers set out in brief constituted prejudicial errors.

The final objection is to that part of the instruction defining "corroborative" evidence. The court properly permitted the girl to testify that appellant had many times previously performed the act of intercourse, and, as properly, by instruction and admonition confined the question of guilt to the one act first testified about. He just as properly told the jury that such evidence was only to be considered as "corroborative" if the jury regarded it as such. He then defined corroborative evidence to mean additional evidence tending to prove similar facts, or facts tending to produce the same results as facts already given in evidence. The objection is not so much to the first part of the instruction but to the part defining the words. It is argued that the jury might have become confused by the use of the word "corroborative," or misled as to the meaning of the phrase. Counsel quotes from Black's Dictionary of Law the meaning given: "To strengthen, to add weight or credibility to a thing by additional and confirming facts or evidence." We have on several occasions defined corroborative evidence, its purpose and effect. Romes v. Com., 164 Ky. 334, 175 S. W. 669; Price v. Com., 296 Ky. 144, 176 S. W. 2d 271. Even though the jury may have been composed of "ordinary common men with possibly an average of the fourth or eighth grade in edu-

cation," we fail to perceive how or in what manner the court could have more clearly or simply defined the words. We have heretofore approved the instruction insofar as it undertakes to define the words, in a case from which those here seem to have been bodily lifted. Miller v. Com., 235 Ky. 182, 30 S. W. 2d 484; Stanley's Instructions, Sec. 964. We fail to find any error which prejudiced the rights of appellant, and the judgment is affirmed.