THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
WILFREDO RUIZ LÓPEZ, Defendant and Appellant.

No. 17240.   Decided August 25, 1961.

*Miguel A. Ruiz* for appellant. *J. B. Fernández Badillo, Attorney General,* and *Juan A. Faría, Assistant Attorney General,* for appellee.

Division composed of Mr. Justice Blanco Lugo, as Chief Judge of Division, and Mr. Justice Rigau and Mr. Justice Dávila.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

The district attorney filed an information against Wilfredo Ruiz López charging him with the crime of rape consisting in that he had indulged in sexual intercourse with minor M.... S..., who on the date of the occurrence was 13 years old and was not the defendant's wife. The trial was set for January 28, 1959, and before it opened there arose an incident as a result of a motion made by the district attorney to include as a prosecution witness the prosecutrix's father. The court granted the motion and the hearing was continued the following day for the purpose of giving the defense an opportunity to prepare itself "in so far as the witness is concerned." In this prosecution the jury did not reach a verdict.

The defendant was again brought to trial. The corroborative evidence [1] offered by the district attorney consisted of the testimony of the prosecutrix's father which, because of its importance in the decision of this case, we fully copy below:

"District Attorney Pérez Regis:
Your name is?

---

[1] Attempts were first made to introduce as corroborative evidence the statements which the prosecutrix made to her sister on what had happened to her with the defendant. We have examined the incident as it appears from the transcript of the evidence and, in our opinion, the trial court acted correctly in rejecting the proposed evidence, since, obviously, it did not comply with the requirements of contemporaneity and spontaneity necessary in the case of statements which form part of the *res gestae. People* v. *Oquendo,* 83 P.R.R. 227 (1961); *People* v. *Lugo,* 70 P.R.R. 134 (1949); *People* v. *Márquez,* 64 P.R.R. 354 (1945).

Witness:

J ... S ... S ...

Are you married or single?

Married.

What is your wife's name?

C ... R ...

M... S... R..., what is she to you?

My daughter.

Where was she born?

She was born in Sierra Baja.

In what town?

Guayanilla.

To offer as evidence the birth certificate of the alleged prosecutrix M . . . S . . . R . . .

Judge:

The defense.

Attorney Ruiz:

Leave it pending, Your Honor.

Judge:

Pending cross-examination.

District Attorney Pérez Regis:

Don Julio, do you know the defendant?

Witness:

I know him because he came to my house on two occasions to offer me money in order that the case would not be heard before this court.

Prior to that date, did you know him?

Before that?

·Yes.

I believe I had never seen him before.  Perhaps I did, but I do not recall.

And where did he go, to your house?

To my own house.

Where do you live?

In Barrio Indios of Guayanilla.

Did he go there?

Yes, sir.

Did he go alone or with someone?

The first time he went with another man, but I did not know him either.

Attorney Ruiz:

Your Honor, we object to the witness' statement because I believe it is immaterial and irrelevant.

Judge:

Objection overruled.

District Attorney Pérez Regis:

That you ...?

Attorney Ruiz:

Exception.

District Attorney Pérez Regis:

What did he talk to you about?

Witness:

He came to my house on January 28 to see me about making a settlement, but since I am not the complainant I could not talk with him. After that he came to see me and offered me $300, promised to give me work, and told me to remove the girl from where she was staying because the woman was bad.

How much did he offer you?

He offered me $300 and promised to establish her in a room and help her as much as he could.

And did you know where you were going to find him?

I don't know if he would be drunk or what?

If you knew where you were going to find him?

I have his address.

Who gave you that address? What did he do in order to give you the address?

He took out a notebook from the car and gave me the address.

Can you read and write?

No, sir, no.

What is this I am showing you?

That's it.

Who gave you that?

He did.

District Attorney Pérez Regis:

Who is he?

That one over there.

The defendant?

Yes, sir. Whenever I have to do anything, I make a cross.

Who wrote that?

That man.

Did you see him writing?

Yes, sir.

And this is the paper he gave you?

Yes, every time I have to do something I have to make a cross.

Let it be marked Exhibit 1 of The People.

Judge:

Mark it Exhibit 1 of The People.

District Attorney Pérez Regis:

That's all, Your Honor.

Judge:

Cross-examination.

Attorney Ruiz:

May it please the Court. Witness, you said that you did not know whether he was drunk or not?

Witness:

He came to my house.

And weren't you drunk?

I don't use that. He invited me to go to Guayanilla to drink.

And you did not invite him?

No, sir.

Attorney Ruiz:

Do you recall that this morning you were in the hall of the Court?

I was around.

Tell me, is it true or not that you followed him wherever he went?

I did not follow him.

That wherever I went with him, you walked behind us?

No, sir.

Or are you afraid to say here that you were trying to make a settlement?

District Attorney Pérez Regis:

We object to that.

Witness:

I have nothing to do with him. I have to do with my two daughters only.

Attorney Ruiz:

That's all.

District Attorney Pérez Regis:

That's all."

The evidence of corroboration required in this case of statutory rape must refer to the commission of the carnal act. *People* v. *Colón*, 81 P.R.R. 788 (1960). We must determine whether the *corpus delicti* having been established by the

stipulation of the physician's testimony on the examination of the prosecutrix, the evidence presented, if believed by the jury as evidently it was, is sufficient to constitute an incriminating admission contained in the offer made by the defendant to compromise the offense charged.

The true reason warranting the exclusion of evidence of an offer of compromise of claims is that it does not ordinarily imply that such claim is well founded, but rather a belief that the further prosecution of the claim would cause such annoyance as is preferably avoided. As stated by Wigmore, "the offer implies merely a desire for peace, not a concession of wrong done." 4 Wigmore, Evidence 28, § 1061 (3d ed.). That is why the state, in its desire to promote peace among the citizens, encourages compromises.[2] We have repeatedly held that evidence on negotiations and offers of compromise is not admissible in civil actions. *Rodríguez v. Great American Indemnity Co.*, 63 P.R.R. 582, 586 (1944); *People v. Central Cambalache*, 59 P.R.R. 59, 73 (1941); *Díaz v. Arroyo*, 50 P.R.R. 306 (1936). See Rule 307 of the Rules of Evidence (Act No. 126 of June 27, 1961), adopted by the Supreme Court of Puerto Rico, submitted to the Legislative Assembly, and pending approval.

Both the rule and the authorities are divided as to the admissibility of offers of compromise of offenses. II Wharton, Criminal Evidence 171, § 413 (12th ed.); McCormick, Evidence 542, § 252 (1954 ed.); II Jones, The Law of Evidence § 386 (5th ed.); Tracy, Handbook of the Law of Evidence 146 (1952). Some states adhere to the absolute rule that offers of compromise of offenses or statements made in the course of negotiations are not admissible. *Sanders v. State*, 41 So. 466 (Ala. 1906); *Richardson v. State*, 186 So.

---

[2] Attempts have been made to explain the exclusion of this evidence as a situation similar to that of the privileged communications and on the basis of the existence of a certain contractual relation with an express reservation of secrecy as to its terms. Wigmore, *op. cit.* at 26 and 27, rejects these theories.

574 (Ala. 1938); *Vowell* v. *State*, 101 So. 780 (Ala. 1924); *State* v. *Mau*, 285 Pac. 992 (Wyo. 1930). The last two cases involved seduction and rape. Most jurisdictions favor admissibility in criminal cases, although their position is different in the case of offers of compromise in civil actions. *State* v. *Slane*, 41 P.2d 269 (Wyo. 1935) (rape); *People* v. *Gambony*, 83 N.E.2d 321 (Ill. 1949); *State* v. *Hanson*, 223 N.W. 55 (S.D. 1929); *State* v. *Heath*, 209 N.W. 279 (Iowa 1926) (rape); *Grace* v. *Commonwealth*, 196 S.W.2d 417 (Ky. 1946) (statutory rape); *Carter* v. *State*, 34 S.W.2d 208 (Tenn. 1931); *State* v. *Givens*, 70 S.E. 162 (S.C. 1911); *Harrison* v. *State*, 178 So. 458 (Ala. 1937).

Harmonizing the public policy underlying the necessity for encouraging compromises as a means of restoring peace among the citizens with the express provisions which prescribe the offenses which may be compromised (§ 445 of the Code of Criminal Procedure, 34 L.P.R.A. § 1601), we believe that evidence of offers of compromise of offenses and of statements made in the course of negotiations should be excluded in cases of the misdemeanors mentioned in the said section.[3] *State* v. *Jackson*, 351 P.2d 439 (Ore. 1960). In all other cases this evidence may be admitted, since the offer of compromise not only constitutes an illegal act which tends to obstruct justice, but the public interest calls for punishment of the offense as a means of compensation to society, and the factor of public peace and tranquillity plays no part. *Carter* v. *State*, 34 S.W.2d 208 (Tenn. 1931).

---

[3] Section 445 of the Code of Criminal Procedure provides that:
"When a defendant is held to answer on a charge of misdemeanor, for which the person injured by the act constituting the offense has a remedy by civil action, the offense may be compromised as provided in the next section, except when it is committed:

1. By or upon an officer of justice, while in the execution of the duties of his office;

2. Riotously;

3. With an intent to commit a felony. Code of Criminal Procedure, 1935, § 445."

·· The Court should, however, adhere fundamentally to the form of the offer or statement. Professor Wigmore states as follows in referring to offers of compromise in general: "What is important is the form of the statement, whether it is explicit and absolute. If, making all implications from the context and the circumstances, the statement assumes the adversary's claim to be well-grounded for the mere purpose of discussing a settlement which will avoid litigation, *and expresses nothing as to the terms of the specific claim*, it is not an admission... If, on the other hand, the statement is explicit and absolute so far as appears, it is not saved by any cabalistic phrase [such as 'without prejudice'], nor by its occurrence in the course of compromise-negotiations." Wigmore, *op cit.* at 29, § 1061. By analogy, the offer of compromise or statements which would be sufficient in a criminal case must contain something more than a general expression, which though it may well be an index of criminal conduct, is also compatible with the sensible desire not to submit the accused to a prosecution with the resulting consequences in the social and economic order. *Cf. Roach* v. *State*, 97 So.2d 837 (Ala. 1957). This is particularly true in offenses of the nature of the one under consideration in which, regardless of its final outcome, it generally has further implications in the familiar order and which also affect the reputation in the community.

■ It is well to add that evidence on offers of compromise or statements made in the course of negotiations to settle a civil action growing out of the same facts which have given rise to the criminal prosecution, are not admissible either in a criminal prosecution. *Helms* v. *State*, 45 So.2d 170 (Ala. 1950); *cf. Ecklund* v. *United States*, 159 F.2d 81 (C.C.A. 6, 1947).

■ We have carefully examined the testimony given by the prosecutrix's father on the offers which the defendant made to him, and they do not show clearly that the defendant

has admitted implicitly that he had carnal relations with the minor, nor any circumstance tending to corroborate this aspect of the case. His testimony refers to an offer or payment of the sum of $300 and to establish the prosecutrix in a room, no express reference being made to the facts involved in the offense charged, particularly since it appears from the evidence that the defendant apparently had relations with a sister of the prosecutrix and this part of the testimony was not heard by the jury.[4] Under such circumstances, and in view of the rule of law which we have announced, the acquittal of the defendant is ordered because the corroborative evidence is not sufficient.

---

[4] These facts were revealed in the course of the minor's testimony as to the statements which she made to her sister. This part of the testimony was introduced in the absence of the jury for the sole purpose of enabling the judge to pass on its credibility as corroborative evidence. As already stated, the court rejected it.