EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.*
WILFREDO RUIZ LÓPEZ, acusado y apelante.

*Número:* 17240.   *Resuelto:* 25 de agosto de 1961.

*Miguel A. Ruiz*, abogado del apelante; *J. B. Fernández Badillo, Procurador General* y *Juan A. Faría, Procurador General Auxiliar*, abogados de El Pueblo, apelado.

Sala integrada por el Juez Asociado señor Blanco Lugo, como Presidente de Sala, y los Jueces Asociados señores Rigau y Dávila.

El Juez Asociado Señor Blanco Lugo, emitió la opinión del Tribunal.

Contra Wilfredo Ruiz López se presentó por el Fiscal de Distrito una acusación por el delito de violación imputándole la realización de actos carnales con la menor M . . . . S . . . . , quien para la fecha de los hechos contaba solamente trece años de edad y no era la esposa del acusado. Se señaló el juicio para el día 28 de enero de 1959, y antes de comenzar el mismo se suscitó un incidente con motivo de la petición del ministerio público para que se incluyera como testigo de cargo al padre de la perjudicada. El tribunal accedió a lo solicitado y suspendió la vista para el siguiente día a los fines de ofrecer a la defensa la oportunidad de prepararse "en cuanto al testigo se refiere". En este proceso el jurado no llegó a un acuerdo.

Nuevamente se sometió al acusado a juicio. La prueba de corroboración[1] que se presentó por el Fiscal consistió en el testimonio del padre de la menor ofendida, que por

---

[1] Primeramente se trató de presentar como prueba de corroboración las manifestaciones que la perjudicada hizo a una hermana sobre lo que le había sucedido con el acusado. Hemos examinado el incidente según aparece de la transcripción de evidencia elevada, y a nuestro juicio, el tribunal de instancia actuó correctamente al rechazar la evidencia propuesta, ya que obviamente no se cumplía con los requisitos de contemporaneidad y espontaneidad exigidos cuando se trata de declaraciones que forman parte del "res gestae". *Pueblo* v. *Oquendo*, 83 D.P.R. 234 (1961); *Pueblo* v. *Lugo*, 70 D.P.R. 145 (1949); *Pueblo* v. *Márquez*, 64 D.P.R. 371 (1945).

la importancia que tiene a los fines de la resolución de este caso, lo transcribimos íntegramente a continuación:

"Fiscal Pérez Regis:
¿Su nombre es?
    Testigo:
    J.... S.... S....
¿Usted es casado o soltero?
    Casado
¿Cómo se llama su esposa?
    C.... R....
¿M.... S.... R...., qué es de usted?
    Hija mía.
¿Dónde nació ella?
    Ella nació en Sierra Baja.
¿De qué pueblo?
    De Guayanilla.
Para presentar como evidencia la partida de nacimiento de la supuesta perjudicada M.... S.... R....
Juez:
La defensa.
Lcdo. Ruiz:
Que quede pendiente, señor Juez.
Juez:
Pendiente de la repregunta.
Fiscal Pérez Regis:
¿Don Julio usted conoce al acusado?
    Testigo:
    Yo lo conozco porque llegó a casa dos veces a ofrecerme dinero a mí para que no se viera el caso ante esta Corte.
¿Antes de esa fecha, lo conocía usted?
    ¿Anteriormente?
Sí.
    Yo creo que no lo había visto nunca. Podría ser que lo viera pero no recuerdo.
¿Y él fue a dónde, a su casa?
    A la casa mía propia.
¿Dónde usted vive?
    En el barrio Indios de Guayanilla.
¿Allá fue él?
    Sí, señor.

¿Fue solo o acompañado?

La primera vez estuvo con otro señor, pero no lo conocía tampoco.

Lcdo. Ruiz:

Señor Juez, nos oponemos a la declaración del testigo por entender que es inmaterial e irrelevante.

Juez:

Sin lugar la objeción.

Fiscal Pérez Regis:

¿Qué usted...

Lcdo. Ruiz:

Excepción.

Fiscal Pérez Regis:

¿Qué él habló con usted?

Testigo:

El estuvo en veintiocho de enero en casa a hacer un arreglo conmigo, pero como yo no soy el denunciante yo no puedo hablar con él y después de eso estuvo él y me ofreció trescientos pesos, darme trabajo y que sacara la muchacha de donde estaba porque era una señora mala.

¿Le ofreció cuánto?

A mí me ofreció trescientos pesos y a ella ponerle un cuarto y ayudarla en lo que pudiera.

¿Y usted sabía dónde lo iba a encontrar a él?

Yo no sé si estaría borracho o cómo estaría.

¿Qué si sabía dónde lo iba a encontrar?

Yo tengo la dirección.

¿Quién le dio esa dirección? ¿Qué hizo él para darle la dirección?

Sacó una libreta del carro de él y me dio la dirección.

Usted sabe leer y escribir?

No, señor, no.

¿Qué es esto que yo le presento?

La misma es.

¿Quén le dio eso a usted?

Testigo:

El mismo.

Fiscal Pérez Regis:

¿Quién es él?

Ese que está ahí.

¿El acusado?

Sí, señor.  Yo cuando me toca hacer cualquier cosa, hago una cruz.

¿Quién escribió eso?

El señor ese.

¿Lo vio usted escribiendo?

Sí, señor.

¿Y éste es el papel que le dio a usted?

Sí.  Yo cada vez que voy a hacer cualquier cosa tengo que hacer una cruz.

Que se marque identificación una de El Pueblo.

Juez:

Márquese identificación primera de El Pueblo.

Fiscal Pérez Regis:

Nada más, señor Juez.

Juez:

Repregunta.

Lcdo. Ruiz:

Con la venia del Tribunal.  ¿Testigo, usted habló ahí de que usted no sabía si él estaba borracho o no?

Testigo:

El estuvo en casa.

¿Y usted no estaba borracho?

Yo eso no lo uso.  El me convidaba a mí para irme para Guayanilla a beber.

¿Y usted no lo convidaba a él?

Testigo:

No, señor.

Lcdo. Ruiz.

¿Usted recuerda que usted estaba en el pasillo del Tribunal esta mañana?

Estaba por ahí.

¿Dígame, es o no cierto que usted lo seguía a él donde quiera que él caminaba?

Yo no lo seguí a él.

¿Que dondequiera que yo me movía con él, usted andaba detrás de nosotros?

No, señor.

¿O es que usted tiene miedo de decir aquí que usted andaba buscando una transacción?

Fiscal Pérez Regis:

Nos oponemos a eso.

Testigo:
Yo no tengo que ver nada con él. Yo tengo que ver con las dos hijas mías nada más.

Lcdo. Ruiz:
Nada más.

Fiscal Pérez Regis:
Nada."

La prueba de corroboración requerida en el presente caso de violación técnica debe referirse a la realización del acto carnal. *Pueblo* v. *Colón*, 81 D.P.R. 814 (1960). Debemos determinar si, habiéndose establecido el *corpus delicti* mediante la estipulación del testimonio del médico sobre el examen que practicó a la perjudicada, la prueba presentada, de ser creída por el jurado como aparentemente lo fue, es suficiente a tales fines por constituir una admisión incriminatoria contenida en la oferta del acusado de transigir el delito imputádole.

El verdadero fundamento que justifica la exclusión de evidencia sobre transacción de reclamaciones es que ordinariamente no constituyen una aceptación de que tal reclamación es legítima, sino la creencia de que la continuación del pleito o proceso causa molestias y trastornos que es preferible evitar. Según indica Wigmore, "la oferta meramente implica un deseo de lograr sosiego (*peace*), y no constituye una aceptación de que se ha incurrido en falta". Wigmore, *On Evidence*, 3a. ed. sec. 1061, pág. 28. Es por eso que el Estado, en su deseo de fomentar la paz entre los ciudadanos, alienta las transacciones.(²) Hemos resuelto en repetidas ocasiones que prueba sobre negociaciones y ofertas de transacción no es admisible en pleitos civiles. *Rodríguez* v. *Great American Indemnity Co.*, 63 D.P.R. 605, 610 (1944); *Pueblo* v. *Central Cambala-*

---

(²) La exclusión de esta evidencia ha tratado de explicarse como una situación similar a la de las comunicaciones privilegiadas y a base de la existencia de determinado nexo contractual con una reserva expresa de silencio en cuanto a sus términos. Wigmore, *op. cit.*, págs. 26 y 27, rechaza estos criterios.

*che*, 59 D.P.R. 60, 74 (1941) ; *Díaz* v. *Arroyo*, 50 D.P.R. 319 (1936). Véase la Regla 307 de las Reglas de Evidencia (Ley núm. 126 de 27 de junio de 1961) adoptadas por el Tribunal Supremo de Puerto Rico, sometidas a la Asamblea Legislativa y pendientes de aprobación.

Tanto la doctrina como la jurisprudencia se encuentran divididas en lo que se refiere a la admisibilidad de ofertas de transacción de delitos. Wharton, *Criminal Evidence*, (12a. ed.) vol. II, sec. 413; McCormick, *On Evidence*, (ed. 1954), sec. 252, pág. 542; Jones, *The Law of Evidence*, (5a. ed.), vol. II, sec. 386; Tracy, *Handbook of the Law of Evidence*, (1952), pág. 146. En algunos estados se sostiene la regla absoluta de que no son admisibles ofertas de transacción de delitos o manifestaciones hechas en el curso de las negociaciones. *Sanders* v. *State*, 41 So. 466 (Ala. 1906) ; *Richardson* v. *State*, 186 So. 574 (Ala. 1938) ; *Vowell* v. *State*, 101 So. 780 (Ala. 1924) ; *State* v. *Mau*, 285 Pac. 992 (Wyo. 1930). En estos dos últimos se trataba de acusaciones por seducción y violación. La mayoría de las jurisdicciones se manifiesta en favor de la admisibilidad en casos criminales, aunque sostiene una posición distinta cuando se trata de ofertas de transacción en pleitos civiles. *State* v. *Slane*, 41 P.2d 269 (Wyo. 1935) (violación) ; *People* v. *Gambony*, 83 N.E.2d 321 (Ill., 1949) ; *State* v. *Hanson*, 223 N. W. 55 (S. D. 1929) ; *State* v. *Heath*, 209 N. W. 279 (Iowa, 1926) (violación) ; *Grace* v. *Commonwealth*; 196 S. W.2d 417 (Ky., 1946) (violación técnica) ; *Carter* v. *State*, 34 S. W.2d 208 (Tenn., 1931) ; *State* v. *Givens*, 70 S.E. 162 (S. C., 1911) ; *Harrison* v. *State*, 178 So. 458 (Ala., 1937).

▇▇ Armonizando la política pública que subraya la necesidad de alentar las transacciones como medio de restablecer la paz entre los ciudadanos con las disposiciones expresas que indican los delitos que son transigibles (artículo 445 del Código de Enjuiciamiento Criminal, 34 L.P.R.A. sec. 1601), creemos que debe excluirse prueba sobre ofertas de transacción de deli-

tos y de manifestaciones hechas en el curso de las negociaciones para ello, cuando se trata de los delitos menos graves a que se refiere dicho artículo.(³) *State* v. *Jackson*, 351 P.2d 439 (Ore., 1960). En todos los demás casos esta prueba puede ser admitida, pues la oferta de transacción no sólo constituye un acto ilegal que tiende a obstruir la justicia, sino que el interés público requiere el castigo de la ofensa como medio de reparación a la sociedad, y no entra en consideración el factor de paz y tranquilidad pública. *Carter* v. *State*, 34 S. W.2d 208 (Tenn., 1931).

No obstante, el tribunal debe atenerse fundamentalmente a la forma de la oferta o manifestación. El Profesor Wigmore se expresa así refiriéndose a las ofertas de transacción en general: "Lo que tiene importancia es la forma de la manifestación, o sea, si ésta es explícita y absoluta. Si, derivando todas las implicaciones del contenido y de las circunstancias, la declaración presume que la reclamación es legítima para los únicos fines de discutir una transacción y evitar un litigio, *y nada expresa en cuanto a los términos de la reclamación en particular*, no constituye una admisión . . . . . Si, por el contrario, la afirmación es explícita y absoluta, ninguna frase cabalística (como 'sin perjuicio') ni el hecho de que se haya hecho en el curso de negociaciones de transacción (impedirá su admisión)." Wigmore, *op. cit.*, sec. 1061, pág. 29. Por analogía, la oferta de transacción o manifestaciones que serían suficientes en un caso criminal, deben contener algo

---

(³) El artículo 445 del Código de Enjuiciamiento Criminal dispone que:

"Cuando sea detenida una persona para responder a una acusación de delito menos grave, y el individuo perjudicado por el hecho que constituye el delito tenga el recurso de indemnizarse del daño por medio de una acción civil, el asunto puede transigirse en la forma que dispone la sección siguiente, excepto cuando el delito sea cometido:

1. Por un empleado judicial o contra él, mientras esté en el ejercicio de las funciones de su cargo;

2. Tumultuosamente;

3. Con la intención de cometer un delito grave. Código Enj. Criminal, 1935, art. 445."

más que una expresión general, que si bien puede ser índice de una conducta criminosa, es también compatible con el deseo sensato de evitar el acusado verse sometido a un proceso con las consiguientes consecuencias en el orden social y económico. Cf. *Roach* v. *State*, 97 So.2d 837 (Ala. 1957). Esto es especialmente cierto en delitos de la naturaleza del que consideramos en que, no importa el resultado final del mismo, tiene generalmente ulteriores implicaciones en el orden familiar, y que además afectan la reputación en la comunidad.

■ Es conveniente añadir que tampoco sería admisible en un proceso criminal prueba sobre ofertas de transacción o manifestaciones hechas en el curso de negociaciones para terminar un pleito civil basado en los mismos hechos que han dado margen al encausamiento criminal. *Helms* v. *State*, 45 So.2d 170 (Ala., 1950); cf. *Ecklund* v. *United States*, 159 F.2d 81 (CCA 6, 1947).

■ Hemos examinado detenidamente el testimonio prestado por el padre de la perjudicada sobre las ofertas que le hizo el acusado, y de las mismas no se deduce con toda claridad que el acusado haya admitido en forma implícita que tuvo relaciones carnales con la menor ni tampoco circunstancia alguna que tienda a corroborar este aspecto del caso. Su testimonio se refiere a una oferta o pago de la suma de $300 y ponerle una habitación a la perjudicada sin que haya una referencia expresa a los hechos del delito imputado, sobre todo cuando de la prueba aparece que el acusado aparentemente sostuvo relaciones con una hermana de la perjudicada, y esta parte del testimonio no fue escuchada por el jurado.(⁴) Bajo tales circunstancias, y en vista de la regla de derecho que hemos enunciado, *procede decretar la absolución del acusado por no ser suficiente la prueba de corroboración presentada.*

---

(⁴) Estos hechos surgieron en el curso de la declaración de la menor sobre las manifestaciones que le había hecho a su hermana. Esta parte del testimonio se presentó en ausencia del jurado, y a los únicos fines de determinarse por el Juez sobre su admisibilidad como prueba de corroboración. Según indicamos, el tribunal rechazó la misma.