**566**

**COMMONWEALTH of Kentucky,
Appellant,**

**v.**

**Robert B. HILLEBRAND and Douglas
Lee Powers, Appellees.**

Court of Appeals of Kentucky.

March 15, 1974.

Rehearing Denied May 24, 1974.

Ed W. Hancock, Atty. Gen., Kenneth A. Howe, Jr., Asst. Deputy Atty. Gen., Frankfort, Edwin A. Schroering, Jr., Commonwealth's Atty., Frank Coryell, Asst. Commonwealth's Atty., Louisville, for appellant.

Frank E. Haddad, Jr., Laurence E. Higgins, Louisville, for appellees.

JONES, Justice.

Appellee Robert B. Hillebrand, Director of Building and Housing for the City of

Louisville, was indicted under KRS 432.350 for accepting a bribe; and Appellee Douglas Lee Powers was indicted under KRS 431.160 for having been an accessory before the fact of accepting a bribe. The indictment was returned in November 1971 (the alleged offenses having occurred in September 1971), and the defendants were tried in the Jefferson Circuit Court on May 11, 1973. At the close of the evidence for the Commonwealth and upon motion of defendants' counsel the trial court directed a verdict of acquittal. The Commonwealth now appeals seeking certification of the law. KRS 21.140.

In late August 1971 Powers contacted H. M. Dunn, Jr., then president of American Building and Loan Association (hereinafter American). The two met, and Powers told Dunn that there were structural problems involving property upon which American held mortgages. At a subsequent meeting Powers told Dunn that he (Powers) could remedy the difficulties and would see that official files relating to the American property would be destroyed upon payment of $15,000. Dunn was led to understand that condemnation complaints would be filed against the American property if the money was not forthcoming. Dunn and Powers arranged a meeting with Hillebrand, who was to give assurances that the payment would result in a halt to the condemnation proceedings, at which meeting the payment was to be made.

Meanwhile Powers had contacted Ed Sutherland and had told him that for a certain sum of money paid to Powers, Sutherland could obtain a certain license from the City Building and Housing Department without his taking the usual tests. The sum of money, including two marked twenty-dollar bills, was paid to Powers for the license.

Members of the Louisville Police Department, with Dunn's permission, placed recording devices in the office where the above-mentioned meeting was held on September 25, 1971; and they recorded all conversation during the meeting. At the meeting of Dunn, Hillebrand and Powers, the purpose of which was to pass $15,000 from Dunn to Powers in exchange for assurances from Hillebrand that condemnation proceedings would be stopped and files destroyed, Hillebrand stated that upon payment of $15,000 he would destroy the files and stop the condemnation proceedings. During the meeting Dunn offered the money to Hillebrand who directed that it be given to Powers. Powers, after accepting the money, made statements relative to his ability to control various members of governmental departments. Upon leaving the meeting Hillebrand and Powers were arrested. Powers possessed the $15,000 which had just been paid to him, and Hillebrand possessed the above-mentioned marked twenty-dollar bills, which had been given to Powers by Sutherland.

At trial the court excluded all testimony and evidence relating to the Powers-Sutherland transaction and the marked money as well as all testimony and evidence relating to that portion of the taped conversation in which the parties discussed Powers' ability to control various governmental departments.

■ The Commonwealth first argues that the trial court should have permitted the introduction of evidence as to the Powers-Sutherland transaction and the marked money. The contention is that such evidence would tend to show a pattern of conduct that was relative to the issue of intent. That is to say that the Commonwealth contends that it would show that when illicit funds were paid to Powers he in turn paid off Hillebrand for Hillebrand's cooperation.

Appellees assert that the trial court's ruling was proper because in all Kentucky cases in which the court has allowed the introduction of such evidence, the evidence has been only of other *completed* crimes and because evidence that certain money paid by Sutherland to Powers had found its way into Hillebrand's pocket is not evidence of a completed crime. See: Jenkins v. Commonwealth, 167 Ky. 544, 180 S.W.

961 (1915); Lee v. Commonwealth, Ky., 242 S.W.2d 984 (1951); and Edwards v. Commonwealth, Ky., 489 S.W.2d 23 (1972).

Appellees are incorrect in their interpretation of Kentucky law. In Lee v. Commonwealth, supra, the defendant was charged with aiding and abetting the obtaining of money under false pretenses (viz., the selling of stolen meat to a store owner). Therein the Commonwealth was allowed to introduce evidence that the defendant, earlier the same day that he committed the offense, had attempted to sell meat which had been described as being similar to the stolen meat, to another store owner. Certainly the evidence was not conclusive as to another crime. It is entirely possible that the first offer was bona fide and that the defendant actually owned the meat he offered to sell to the first store owner. Therefore we will not bind ourselves by such a rule as appellees suggest, and we hold that the trial court erred in not permitting the Commonwealth to introduce evidence relating to the Powers-Sutherland transaction and to the marked money, because such evidence would tend to show a pattern of conduct that was relative to the issue of intent.

■ The Commonwealth next contends that the trial court improperly excluded evidence relating to statements made by Powers and recorded by police, at the meeting where the $15,000 was paid, immediately preceding the arrest. In response to the Commonwealth's contention appellees assert that Powers' statements did not relate to the crime charged and were properly excluded because they were irrelevant.

In United States v. Matot, 146 F.2d 197 (1944), the Second Circuit Court of Appeals held, per L. Hand, C. J., at 199,

"The exclusion of evidence, which does not too much entangle the issues and confuse the jury, merely because of its logical remoteness from the issue, is always a hazard, and is usually undesirable. It is always hard to say what rea-

sonable people may deem logically material, and all doubts should be resolved in favor of admission, unless some definite rule, like that against hearsay, makes that impossible."

And Professor Wigmore has written that ". . . any and every statement of an accused person, so far as not excluded by the doctrine of confessions . . . or by the privilege against self-incrimination . . . is usable *against him* as an admission." 6 J. Wigmore, A Treatise on the Anglo-American System of Evidence in Trials at Common Law, § 1732, at 99 (3d ed. 1940). See United States v. Rouse (5th Cir.) 452 F.2d 311 (1971), citing Wigmore, supra.

And the case law in Kentucky and in other jurisdictions seems to support this point of view. In Eisner v. Commonwealth, 375 S.W.2d 825 (1964), following her conviction for prostitution the appellant urged this court to reverse, claiming that the trial court had erred when it permitted a police officer to testify that appellant stated to him, while she was free on bail and awaiting trial, that

". . . she was a common whore but was not plying her trade at that time. We observe that appellant made this remark voluntarily and at a time when she was free on bail. The remark constitutes an admission against interest having probative value tending to establish appellant's guilt of the offense charged." Eisner v. Commonwealth, supra, 827.

We affirmed the trial court. It is, as we stated, true that the above-quoted testimony relates to the crime charged, but only in the most general way. The statement does not relate directly to the particular act for which the defendant was tried; but, rather, it relates to other past acts on her part.

In Glasscock v. Commonwealth, Ky., 307 S.W.2d 188 (1957), the appellant contended that his statement which was introduced at trial was not relevant to the crime charged and should not have been admitted into ev-

idence. The appellant had written, before trial, a letter to the girl of whom he was accused of having had carnal knowledge. The letter touched upon several topics; but it did not in any way relate directly to, or mention the act of, the alleged carnal knowledge. We held that it was not error to admit the statement into evidence, and we affirmed the conviction.

And in Grace v. Commonwealth, 302 Ky. 796, 196 S.W.2d 417 (1946), on facts similar to those in Glasscock v. Commonwealth, supra, we again affirmed the trial court. Here the defendant, charged with having had carnal knowledge of a young girl, upon learning that the girl was pregnant, wrote a letter to the girl's mother, in which letter he merely offered to pay the girl's medical expenses and to help support the baby if the charges were dropped. We held that the statement was admissible.

In Kitchen v. Commonwealth, 275 Ky. 564, 122 S.W.2d 121 (1938), the appellant had been convicted of detaining a woman against her will. We held that it was not error for the trial court to have allowed the introduction of the appellant's statement, when told by neighbors that they had just witnessed his deed, "God forgive." Surely this statement by the accused cannot be said to relate directly in any way whatever to the crime charged. See also Dickinson v. State, 222 Ind. 551, 55 N.E.2d 325 (1944); and State v. Dreher, 166 La. 924, 118 So. 85 (1928).

We will adhere to the above-cited reasoning, and we hold that it was error for the trial court to exclude from evidence testimony as to statements made by the accused at the time of the offense charged, merely because of the logical remoteness from the issue.

The Commonwealth next contends that the trial court erred when it directed a verdict of acquittal at the close of the case for the Commonwealth.

▮ The Commonwealth's evidence showed that Hillebrand had agreed that upon payment of $15,000 to Powers, he (Hillebrand) would halt condemnation proceedings against the American property and would destroy the official files relating to the property. That Hillebrand refused to touch the money and directed that it be handed to Powers is of no consequence. Hillebrand might later receive a share of the money, or he might never receive a share of the money.

The statute states, in pertinent part:

"Any . . . officer . . . of any . . . city . . . who takes or agrees to take any bribe to do or omit to do any act in his official capacity shall be fined . . . [etc., setting out the appropriate punishment.]." KRS 432.350(2).

In order to come under this statute it is necessary that the agreement to take the bribe occur while the one accepting the bribe is an officer. Tharp v. Nolan, 119 Ky. 870, 84 S.W. 1168 (1905). It is not necessary, however, that value accrue to the official during his term of office. It is certainly conceivable that an officer could accept a bribe whereby he himself would never receive value, but instead would direct that value be paid to friends, relatives, or to some other person or organization. Else parties could agree to a bribe to be paid, after the officer's term had expired, to the officer or to anyone, in exchange for acts or omissions on the part of the officer during his term, and be exempt from prosecution under this section.

▮ Even though no evidence as to Powers' statements and as to the Sutherland-Powers transaction involving the marked money was admitted into evidence, as would have been proper, the Commonwealth, at the conclusion of its evidence, had made out a case submissible to the jury. Thus it was error for the trial court to direct a verdict of acquittal at the close of the Commonwealth's case.

The law is so certified.

All concur.