STATE, Respondent, v. HANSON, Appellant.

(223 N. W. 55.)

(File No. 6287. Opinion filed January 15, 1929.)

*W. J. Jacobs,* of Faulkton, and *D. J. O'Keeffe,* of Pierre, for Appellant.

*Buell F. Jones,* of Britton, and *Paul Byrne,* of Faulkton, for the State.

BROWN, J.  Defendant was convicted of embezzlement, and, from judgment and an order denying a new trial, he appeals.  Defendant was in the real estate, loan, and insurance business at Onaka in Faulk county, and undertook to procure two loans of $1,500 each, one on a tract of land in Edmunds county and the other on a tract in Faulk county, belonging to Z. A. Comfort and C. L. Bright, who lived in Jessup, Iowa.  The record title to the Edmunds county land was in the names of Z. A. Comfort and C. L. Bright; the record title to the land in Faulk county was in Comfort alone.  The loans were procured from G. W. Hart Farm Mortgage Company of Watertown, S. D., and the amount of each loan, less commissions of the G. W. Hart Company, were paid to defendant pursuant to an order which the G. W. Hart Company required to be signed by the borrower and which recited that defendant was appointed as the borrower's agent to receive for him the amount of the loan, and whose receipt should be a discharge of G. W. Hart Company from any liability to the borrower on account of the loan.  On September 15, 1925, defendant received from G. W. Hart Company two checks for $1,432.75 each, being the amount of the $1,500 loans less commissions; notes and mortgages for the amount of the loans with abstracts of title to the lands having been previously delivered to G. W. Hart Company.

Defendant indorsed and remitted to Comfort and Bright one of the checks, and deposited the other to the account of H. J. Hanson Company, a corporation entirely controlled by him.  In

response to inquiries as to why the other check was not forwarded, defendant sent replies indicating that corrections needed in the abstract were causing delay. On November 4th, defendant received the following wire from Comfort and Bright: "Informed you have loan draft. Mail at once. Answer." Defendant replied that remittance had been made, and, if not received by them, to advise and a duplicate draft would be sent. On November 9th he received this telegram: "Immediate remittance required on farm loan. No extension granted. Wire proceeds." He thereupon sent them a check on the Onaka bank for $1,425.95, signed, "H. J. Hanson Company, By H. J. Hanson, Pres.," purporting to be a duplicate of one which he claims was sent on October 2d in an envelope bearing his return address, which was never returned. This duplicate was at once forwarded for payment, but was not paid for want of funds. He testified that he had regular printed blank checks for H. J. Hanson Company, but that they had no stubs. This testimony was apparently to explain the failure to produce the stub for the check which he claimed was mailed on October 2d.

The information charges, in substance, that on September 16, 1925, in Faulk county, defendant was the agent of Z. A. Comfort and C. L. Bright, and as such received into his possession and custody a check for $1,432.75, which was the property of Z. A. Comfort and C. L. Bright, and that he "did then and there wilfully, unlawfully, fraudulently and feloniously appropriate and convert the said check and the proceeds thereof to his own use, in violation of said agency and trust, and thereby did embezzle the same."

At the bottom of one of the checks was written "Comfort and Bright," and at the bottom of the other "Z. A. Comfort." This was evidently memoranda of the Hart Company to indicate that the check bearing the words "Comfort and Bright" was for the loan on the Edmunds county land, and that bearing "Z. A. Comfort" for the loan on the Faulk county land. The check for the Edmunds county land was the one which defendant indorsed and remitted and which was paid. Defendant on the trial insisted that the prosecution was for the embezzlement of that check, and made numerous objections to evidence on that theory. This theory is evidently based on the fact that the record title to the Edmunds county land was in Comfort and Bright, and, the information alleging that defendant received the check as the agent of Comfort

and Bright, it must necessarily refer to the check for the loan on the Edmunds county land and not to the check for the loan on the Faulk county land, the record title to which was in Comfort alone, although the evidence is undisputed that both tracts were owned in equal undivided shares by Z. A. Comfort and C. L. Bright. This contention, that defendant was being prosecuted for embezzlement of a check which he had remitted to his principal, and which had been promptly paid to the principal, is too trivial for serious consideration. On the same theory, defendant at the close of the state's evidence made a motion that the state should be required to elect upon which check it intended to stand, to which the court very properly responded: "I don't see that there is anything to elect on. * * * The motion is denied, the court being of the opinion that the evidence clearly shows which of these two checks it must stand on."

Defendant insists that the information charges only the embezzlement of a check, and that, since the check was payable to his own order and he had a right to deduct from the proceeds thereof the sum of $7.80 for continuation of abstracts and recording fees, he had a perfect right to deposit the check in the bank in his own name or that of H. J. Hanson Company, and to check out the proceeds as he saw fit; that, if he used the entire proceeds for his own purposes, that simply created the relation of debtor and creditor between him and Comfort and Bright, and constituted no public offense; and he makes the further claim that, since the information only charged the embezzlement of a check, he cannot be convicted of embezzlement of the proceeds of the check, even if he did misappropriate such proceeds. As to the last contention, we think the information plainly charged the embezzlement of both the check and the proceeds. It charges that he appropriated and converted "the said check and the proceeds thereof to his own use, in violation of said agency and trust, and thereby did embezzle the same." The New Oxford Dictionary defines the words "the same" as used in law literature thus: "The same; the aforesaid person or thing. Now rare in literary use; still common in legal documents." "The same," as used in this information, refers to the aforesaid things mentioned in the information, and these things are the check and the proceeds thereof. The plain language of the information charges defendant with embezzlement of the

check and the proceeds thereof, and proof that he did either establishes the offense of embezzlement. If charging embezzlement of the check and of the proceeds thereof is charging more than one offense, defendant had a right to demur for that reason, Code, § 4771, subd. 3, but he did not do so, and therefore waived any objection on that ground. Code, § 4779.

■ The contention that the proof does not show embezzlement of the check, but, if anything, embezzlement of only part of the proceeds; is untenable. The purpose for which the check was intrusted to him was to transmit the proceeds thereof (less $7.80, which it is conceded he had a right to retain) to Comfort and Bright, and, when he deposited it in the name of H. J. Hanson Company and proceeded at once to use the proceeds for him own purposes, he embezzled the check as well as the proceeds.

In People v. Duzan, 272 Ill. 478, 112 N. E. 315, defendant was indicted for the embezzlement of a draft for $900. He had authority to indorse the draft and receive the money, which he did, but failed to account for it to his principal, and it was held that he had embezzled the draft.

In Dyer v. State, 155 Ark. 497, 244 S. W. 722, defendant who was a station agent in Black Oak, Ark., and, as such, agent for American Railway Express Company, collected $42.15 on a C. O. D. package. He got a check for the amount payable to American Express Company, which was a different corporation from American *Railway* Express Company. He had authority, and it was his duty, to cash this check, deduct express charges for the Railway Express Company, and remit the balance to the consignor by an American Express Company order. He indorsed and cashed the check, but did not remit. It was contended that the only charge against him was embezzlement of the check, and, since he had authority to indorse and cash the check, it was plain that he had not embezzled the check, whatever he might have done as to the proceeds, but the court said that, while the jury might well have found that he embezzled the money and not the check, that was not the only inference deducible from the facts, and that the jury were warranted in finding the defendant guilty of embezzling the check.

■ The checks received by defendant in the case at bar, while payable to his order, were the property of his clients, and

Code, § 4234, provides that the retention of the property of another is not excused by a claim that it is held to offset or pay a demand against him, but, irrespective of this section, and conceding that defendant had a right to deduct the $7.80 from the amount of the check, that did not authorize him to deposit the check in his own name or that of the H. J. Hanson Company, and not only deduct the $7.80, but proceed at once to use the entire deposit for his own ends and purposes.

■ If defendant had a right to deposit the checks to his own account or that of H. J. Hanson Company and deduct therefrom $7.80 for disbursements due him, that certainly did not change his relationship to the borrowers. He still remained their agent, and the money he had received on the loans was their money. Hildebrand v. Beck, 196 Cal. 141, 236 P. 301, 36 A. L. R. 1076. Even if he had a right to keep $7.80 of it, he had no right to keep it all. Commonwealth v. Jacobs, 126 Ky. 536, 104 S. W. 345, 13 L. R. A. (N. S.) 511, 15 Ann. Cas. 1226.

■ When he deposited the check, the balance in H. J. Hanson Company's account was $59.90, making with the check the sum of $1,492.65 in the account that day. He immediately proceeded to check on the account, and inside of eight days had the balance reduced to $521.86. He claims that he was justified in holding the full amount of this check because he did not know the exact amount of the charges he had incurred for continuing abstracts and recording fees. These charges were all incurred before he received the checks, for the testimony shows that the mortgage company paid out nothing on the loans until the abstracts were satisfactory and their mortgages recorded. The exact amount of these charges could have been ascertained by him at any time within a day or two through inquiry by letter, but, conceding that he was warranted in waiting until the 1st of the month, when he admits he received the bill for the last of these charges, he should certainly have remitted then. He claims that he did so by check that was never received, and that the envelope in which it was transmitted was never returned to him, although it had his return card printed on the outside. But on October 2d, the date on which he claims he sent that check, which was drawn on the H. J. Hanson Company's account, the balance in that account was only $550, and at no time prior to the trial of this action

was there anywhere near enough in that account to have paid the check.

On November 4th, after receiving the telegram: "Informed you have our loan draft. Mail at once. Answer"—he sent a night letter reading: "Just had word from Farm Mortgage Company that remittance had not been received on loan on quarter in Edmunds county. Remittance has been made on this loan and if not received by you, advise, and duplicate draft will be sent you. H. J. Hanson." It will be observed that he makes no reference to the telegram he had that day received, but intimates that he had been informed by the mortgage company that remittance had not been received. There is nothing in the record except this telegram to indicate that he had any communication from the mortgage company after receiving the checks.

When, in response to a peremptory telegram of November 9th, stating that no extension would be granted, he, on November 11th, mailed what he testifies was a duplicate of the check he says he sent October 2d, for $1,424.95, the balance in the H. J. Hanson Company account was only $82.60, and the latest balance shown in it, on December 11th, was $16.10. He contends that he expected the sum of $1,300 as profit on a land deal to be placed in the company account, which he claims would have been sufficient to make good the duplicate check which he mailed on November 11th; that this $1,300 was paid into the bank which, instead of depositing it in the H. J. Hanson Company account, deposited it in his personal account and applied it on his individual indebtedness to the bank. But J. R. Green, the president and active manager of the bank, testified that this real estate transaction occurred in the latter part of October and was consummated about the 27th of October; that he had a conversation with defendant about the time the deal was closed in which defendant asked his assistance in closing the deal and offered him a commission, to which he replied that he was not looking for a commission, but he would like to have defendant reduce his debt to the bank through the profits on this deal and defendant said that this was agreeable to him. This clearly made a question for the jury as to the manner in which it was agreed this $1,300 should be applied, but, in any event, defendant had misappropriated the check and its proceeds more than a month before this $1,300 was realized, whatever the account to which it should have been applied.

A few days before the trial a conversation was had between defendant's attorney and the complaining witness. The state's attorney asked this witness this question: "Q. You may state whether or not at that time and place there was an offer or tender of money made to you in settlement of this matter." The question was objected to as incompetent, immaterial, and not binding upon the defendant. The objection was overruled, and the witness answered, "Yes, sir." The further question was asked, "Q. And what was that?" to which a similar objection was interposed, and the court said: "The objection in sustained and the answer to that question which was immediately before the last one, as to whether an offer was made, the jury are directed to disregard that answer." If there was error in the ruling of the court on the preceding question, it was cured by the explicit instruction to the jury given by the court, that they were to disregard the answer.

Further, defendant, as a witness in his own behalf, testified that he himself, about the time he was arrested, told Mr. Bright he could get his money for him within a couple of hours. It is contended that evidence showing that appellant had tried to settle the indebtedness was entirely immaterial, that it was in the nature of an offer of compromise and was inadmissible, but admissions by a defendant in a criminal case, if voluntarily made, are always admissible, and a voluntary offer of compromise in a criminal case is likewise admissible. What inferences are to be drawn from such admissions is for the jury to determine. 16 C. J. 626-635.

We find no error prejudicial to defendant, and the judgment and order are affirmed.

SHERWOOD, P. J., and POLLEY, J., concur.

CAMPBELL, and BURCH, JJ., dissent.