[Crim. No. 5020.   Second Dist., Div. One.   Sept. 22, 1953.]

THE PEOPLE, Respondent, v. GEORGE H. NEAL, Appellant.

Walter L. Gordon, Jr., for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an information filed by the District Attorney of Los Angeles County, defendant was charged in count I with a violation of section 11500 of the Health and Safety Code in that he did on or about December 15, 1951, sell and furnish a preparation of heroin. Count II alleged a violation of the aforesaid code section on or about December 24, 1951, in that defendant sold and furnished a preparation of heroin. The last-named count was dismissed by the court upon the People's election not to present any evidence as to the offense therein charged.

Following the entry of a plea of not guilty and waiver of jury, the prosecution's case as to count I was by stipulation submitted to the court upon the transcript of the evidence adduced and the exhibits introduced at the preliminary examination. At the trial defendant testified in his own behalf.

Thereafter, the court found defendant guilty of the offense charged in count I of the information. Motion for a new trial was denied and judgment was pronounced sentencing defendant to state prison for the term prescribed by law.

From the judgment and the order denying his motion for a new trial, defendant prosecutes this appeal.

Epitomizing the factual background of this prosecution, there is evidence on behalf of the People that on December 15, 1951, Police Officer Nickens and an informer, Arthur Thornton, stationed themselves in front of a hotel on East Fifth Street in the city of Los Angeles. About 11 a. m. defendant approached the two, apparently pursuant to a previous arrangement between Thornton and himself. Thornton introduced Officer Nickens under a fictitious name to defendant and suggested, ''If we are going to talk business, let's get inside off the street.'' The three then entered the hotel and went to room 309.

In the hotel room, Officer Nickens and Thornton each produced $150 and placed the money on the bed. Defendant picked up the $300, stating that this amount was not enough, but that since Nickens and Thornton were starting as ''dealers,'' he would let them have ''it'' for $350, and that they could pay him the other $50 when they had made a sale. Defendant agreed to deliver ''it'' in small bundles to facilitate resale. He also said that the next purchase would cost Nickens and Thornton $400. An arrangement was made to meet later at a house on Fifth Avenue to consummate the transaction.

At about 10:45 the same evening Officer Nickens went to the Fifth Avenue address and entered the building. Shortly thereafter defendant and Thornton arrived. Appellant placed upon the bed a plastic bag containing 72 wrapped packages, each of which was filled with a white powdery substance, and said, ''Here is your stuff, fellows.'' Defendant then stated that if Thornton and Nickens wanted ''any more'' for the holidays to let him know and that he would supply them.

As a result of this latter remark, Nickens and Thornton made a second purchase from defendant on or about December 22, 1951.

The packages delivered by defendant on December 15, 1951, were identified by a qualified chemist as containing heroin.

Defendant testified that on December 15, 1951, he was on Fifth Street when the aforesaid Arthur Thornton, referred to as ''Tiny,'' approached him ''in regards to obtaining some narcotics for him and I told him I didn't know whether I could get any or not, and he said, 'I figured because you were working with bail bonds that you come in contact with people that deal in narcotics and you can probably find some' and I said, 'Well, if I can I'll let you know.' ''

That Thornton then introduced defendant to a man by the name of "Turley" (who in fact was Officer Nickens). That the three of them went to room 309 of the hotel where Thornton and "Turley" each gave him $150, and "told me to do my best to try to get the stuff for them and I told them I would." That there were no narcotics in the room that morning. That in the evening of the same day defendant met Thornton who inquired of him "if he had done any good?" That he (defendant) replied, "No," and thereupon returned the $300 to Thornton. That later on the same evening Thornton asked defendant to "take him home." That when they arrived at Thornton's home the latter invited the defendant to come into the house. Defendant testified he accepted the invitation and when he entered saw "Turley" (Officer Nickens) there. That Thornton thereupon "came out with this package (containing the heroin) under his coat." Defendant testified that at no time did he have any narcotics in his possession or deliver any.

It is first contended by appellant that his arrest constitutes entrapment as a matter of law and therefore voids the conviction. In this appellant is mistaken. ▇▇ As was said by this court in *People* v. *Schwartz,* 109 Cal.App.2d 450, 455 [240 P.2d 1024], quoted with approval by the Supreme Court in *People* v. *Roberts,* 40 Cal.2d 483, 489 [254 P.2d 501], "It is not the entrapment of a criminal upon which the law frowns, but the seduction of innocent people into a criminal career by its officers is what is condemned and will not be tolerated. ▇▇ Where an accused has a preexisting criminal intent, the fact that when solicited by a decoy he committed a crime raises no inference of unlawful entrapment (citations) . . . The jury was warranted in inferring that appellant was not *persuaded or lured,* but that he willingly committed the offense charged against him and assumed the chance of apprehension." (Emphasis included.)

And, as stated in 22 Corpus Juris Secundum 102: "Especially is this true in that class of cases where the offense is one of a kind habitually committed, and the solicitation merely furnishes evidence of a course of conduct."

▇▇ Succinctly stated, the situation with which we are here confronted is that a law enforcement officer was informed by Thornton that the latter could "make arrangements" for the officer to meet appellant and buy narcotics from him. Upon receiving this information the officer furnished appellant an opportunity to commit the offense charged. We are satisfied

that this does not constitute unlawful entrapment as that term is known to the law.

■ As was further said by this court in *People* v. *Schwartz, supra,* pages 454 and 455: "Entrapment is the conception and planning of an offense by an officer and his procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion, or fraud of the officer. In other words, persuasion or allurement must be utilized to entrap. . . . In the instant case it appears that the officers merely employed a stratagem for the purpose of apprehending a person already engaged in criminal activities. Therefore, no case of unlawful entrapment is made out. In the case now engaging our attention, the possession of a contraband narcotic and the formation of the intent and purpose to violate the law existed before the officers became aware of the situation . . . The arrangements made by the officers were designed only to apprehend appellant in the furtherance of his criminal enterprise (*Stein* v. *United States,* 166 F.2d 851)."

■ In the evidentiary narrative we have herein set forth there is contained ample evidence to justify the trial court in concluding that appellant was a willing seller of narcotics, and his conviction cannot be set aside merely because an enforcement officer and his agent became the willing buyers and simply created the opportunity for appellant to ply his trade.

■ There was evidence that appellant had ready access to the contraband heroin; that not only was he willing to make the sale for which he was convicted but he also volunteered to make a second sale to the officer. Appellant's obvious familiarity with the narcotics trade, coupled with his ability to produce a substantial quantity of heroin on short notice, all indicate beyond a reasonable doubt that he was not an innocent person who was induced to commit the crime charged by the trickery, persuasion or fraud of the officer. *People* v. *Gallagher,* 107 Cal.App. 425 [290 P. 504], relied upon by appellant does not aid him. That case merely holds that an accused is entitled to an instruction based upon the theory of his defense, provided such instruction correctly states the law and the defense is supported by substantial evidence. Other cases cited by appellant do no violence to the foregoing views herein expressed.

■ Appellant next complains of and characterizes as prejudicial error the failure of the prosecution to call Arthur

Thornton, the informer, as a witness, and making a motion to strike from the record the testimony given by Thornton at the preliminary examination for the asserted reason, "so that it could not be impeached." The veiled intimation of appellant is that the district attorney was thereby attempting to suppress evidence favorable to the former. Appellant's contention is not supported by the record. On the contrary, it appears that the district attorney fully cooperated with appellant's counsel in attempting to secure the presence of Thornton at the trial.

Upon several occasions when the case was called for trial, Thornton, who had been subpoenaed by the prosecution, failed to appear. On each such occasion a bench warrant was issued with the result that Thornton's presence in court was later obtained. However, on November 14, 1952, which was the last calling of the case before the actual trial thereof, Thornton was absent, and at appellant's request the matter was continued to January 8, 1953. On the latter date, the record reflects that appellant apparently made no objection to the absence of the witness Thornton, and willingly proceeded to trial without him. Manifestly, no prejudice was suffered by appellant, because the testimony given by Thornton was stricken from the transcript submitted to the trial judge in support of the People's case.

Furthermore, the record reflects that when the district attorney offered a stipulation to submit the case of the People on the preliminary examination transcript and that the court "not consider that testimony (Thornton's) for any purpose whatsoever," and that the court issue a bench warrant for the arrest of the absent witness, appellant's counsel stated, "Accept the stipulation." Appellant's last-mentioned claim lacks substance here.

For the foregoing reasons, the judgment and the order denying defendant's motion for a new trial are, and each is affirmed.

Doran, J., and Scott (Robert H.), J. pro tem., concurred.