(No. 35798.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WALTER HALL, Plaintiff in Error.

*Opinion filed September 28, 1962.*

CHARLES I. CALISOFF, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and JOHN T. GALLAGHER and EDWIN J. BELZ, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

After a bench trial in the criminal court of Cook County, the defendant, Walter Hall, was found guilty under an indictment charging him with unlawfully selling and possessing narcotic drugs. He was sentenced to imprisonment in the penitentiary for a term of 15 years to life and now prosecutes this writ of error for review. As grounds for reversal, most ably presented by his appointed counsel, defendant makes the contentions that his undisputed testimony established a defense of entrapment as a matter of law, and that the means by which the police secured his arrest and conviction denied him due process of law.

Defendant and one Dominic DeBenedetto were both narcotics addicts and were acquainted with each other. On July 21, 1959, in midafternoon, DeBenedetto was in the custody of Chicago police and agreed to assist them. After he had made a telephone call arranging to meet defendant at the latter's residence, the police obtained fifteen one-dollar bills and recorded the serial numbers, and the informer and officer Neil Francis then drove to defendant's residence in an unmarked car. Two other officers, who kept in the background, followed in another vehicle.

There is some immaterial dispute as to whether the in-

former again telephoned defendant but, in any event, defendant soon appeared at the car. Following some conversation, later to be discussed, defendant accepted the fifteen dollars from Francis and left, then returned in about fifteen minutes with eight capsules. A field test disclosed that the capsules contained heroin and the defendant was placed under arrest. When a search of his person produced none of the inventoried money defendant led the police to the apartment of one Arthur Brice, from whom he said he had purchased the narcotics. A search of the latter's apartment revealed capsules of heroin similar to those delivered by defendant and fourteen dollars of the recorded bills. According to defendant, he had purchased ten capsules from Brice for fourteen dollars, two of which he kept for himself, and had spent the other dollar given him to purchase cigarettes.

Returning to the conversations at the car, which form the basis for the claims of entrapment and unfairness, defendant, who knew DeBenedetto was an addict and had used narcotics with him, testified that when he first approached the vehicle the informer said he was sick and wanted defendant to get him some "stuff." When defendant inquired as to who Francis was, the latter purportedly said he was the informer's boss and started to inquire about the price of drugs. Defendant said he was suspicious because he could see no scars on Francis's arms, so he called the informer to one side, outside the car, where he voiced his suspicions, and was told that Francis's "woman" was an addict who was sick, and that Francis wanted to buy some narcotics for her. At this time, according to defendant, the informer again complained that he was sick and wanted defendant to get him some drugs.

The two men then returned to the car where, by defendant's testimony, there was a discussion as to whether "capsules" or "bags" of narcotics were wanted, which culminated when Francis told him to get "bags" and gave him

fifteen dollars for such purpose. Immediately thereafter, however, defendant inconsistently stated that during the course of the last conversation Francis "promised to give me two of the capsules" if defendant would make the purchase.

The prohibition against police action designed to create and induce criminal acts in order to prosecute those persons who commit them is deeply rooted in both Illinois and Federal law. And where it appears that officers of the law or their agents have conceived and planned a criminal offense and have incited, induced, instigated or lured the accused into committing an offense which he would not otherwise have committed and had no intention of committing, entrapment is established and no conviction may be had. (*People* v. *Strong*, 21 Ill.2d 320; *Sorrells* v. *United States*, 287 U.S. 435, 77 L. ed. 413.) On the other hand, entrapment is not available as a defense to one who has the intent to commit the crime, and does so merely because an officer of the law, for the purpose of securing evidence, affords such person the opportunity to commit a criminal act, or purposely aids and encourages him in its perpetration. *People* v. *McSmith*, 23 Ill.2d 87; *Sorrells* v. *United States*, 287 U.S. 435, 77 L. ed. 413.

An analysis of the record in the instant case does not show that defendant was an unwary innocent with no predisposition to commit the crime, or that he was incited, induced or lured into committing a crime that was the product of the creative activity of the police, thus distinguishing this case from *Butts* v. *United States* (8th cir.) 273 F. 35, upon which defendant heavily relies. It reveals instead that defendant, wise in the ways of narcotics traffic and already once convicted of possession, was predisposed to commit the crime, as evidenced by ready complaisance, and that the officers of the law did no more than to afford him the opportunity to commit a crime which he was ready and willing to commit.

Except for defendant's claim that he succumbed to a sympathetic appeal to aid two narcotics addicts who were sick, the case is no different from numerous others in which informers have been utilized and the defense of entrapment has been held not to lie. (*E.g., People* v. *Shannon,* 15 Ill.2d 494; *People* v. *Outten,* 13 Ill.2d 21; *People* v. *Clark,* 7 Ill.2d 163.) However, by defendant's own testimony, it appears that no undue, prolonged or persistent pressures were exerted against him, such as was true in *Sherman* v. *United States,* 356 U.S. 369, 2. L. ed. 2d 848, and that he quickly complied with the request to obtain narcotics once his suspicions of officer Francis were allayed and he was sure it was safe. Indeed, defendant at no time sought to avoid the issue nor did he at any time express or display an unwillingness to obtain narcotics, thus relegating the conversation relating to "sick" addicts to the office of explaining the purchase, rather than to any purpose of persuading or prevailing upon defendant to commit a crime. Under these circumstances we cannot say there was such deception and unfairness as makes it unconscionable for the State to press its case, or which permits defendant to avail himself of the defense of entrapment.

We are not unmindful of defendant's testimony, though somewhat conflicting, that he was promised two capsules of heroin if he would make the purchase. But there is no claim that this inducement was dangled in front of him, or that it was made at a time when his physical need for drugs would incite him to the commission of a crime he was otherwise unwilling to commit. The only reasonable conclusion is, rather, that it was this personal profit which motivated him to secure the narcotics.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*