People of the State of Illinois, Plaintiff-Appellee, v. Capon Washington, Defendant-Appellant.

Gen. No. 50,906.

First District, Fourth Division.

March 22, 1967.

Rehearing denied April 24, 1967.

Sam Adam, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James B. Zagel, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE ENGLISH delivered the opinion of the court.

CRIME CHARGED

Unlawful sale of a narcotic drug.

DEFENSE AT TRIAL

Entrapment.

JUDGMENT

After a bench trial, defendant was found guilty and sentenced to a term of ten years (the statutory minimum) to ten years and one day.

CONTENTIONS ON APPEAL [1]

(1) Entrapment.

(2) The State failed to prove that the substance sold was a narcotic.

(3) The trial court committed reversible error in not requiring a State witness to exhibit her arm during cross-examination on the question of her freedom from addiction.

(4) The court erred in refusing to exclude from the courtroom, on defendant's motion, the police officer in charge of the case, who testified on behalf of the State.

EVIDENCE

*Barbara Lumpkin,* for the State.

At approximately 2:30 a. m. on September 23, 1964, she met police officer Pates at 47th and Evans Streets, Chicago. After agreeing to Pates' request that she "make a buy," she was taken to a lockup where she was searched, found to have no narcotics on her person, and given

---

[1] This appeal was first filed in the Supreme Court, but was transferred here on motion of the State. In allowing the motion, the Supreme Court stated that defendant's contention of entrapment presents no substantial constitutional issue, citing United States v. Bailey, 331 F2d 218, and United States ex rel. Hall v. Illinois, 329 F2d 354.

some marked and prerecorded money for which she signed a receipt. Pates then drove her to 43rd and Vincennes Streets where she contacted defendant at his cabstand. She asked defendant if she could "make a buy" and he acquiesced. There followed the exchange of money passing to defendant and a package passing to her. Upon her request, defendant then drove her to 45th and Woodlawn where the two parted company. At that location she met Officer Pates and gave him the package which defendant had given to her. She then accompanied Pates as he followed defendant's cab to the latter's house at 43rd and Langley where the arrest was subsequently made.

She had formerly been a user of narcotics but had not taken a "shot" in six or seven months. She had known defendant for several years but had not talked to him for a day or more prior to the transaction in question.

*Henry Pates,* for the State.

He was a police officer assigned to the narcotics section of the Chicago Police Department. He met Barbara Lumpkin at 2:30 a. m. on September 23, 1964. As a result of the conversation they had at that time, Miss Lumpkin accompanied him to the Women's Lockup where she was searched by the matron. He then gave her $50 in prerecorded and fluorescent-coated five-dollar bills, and drove her to defendant's cabstand where she got out of the car. She had a conversation with defendant, and Pates then saw her hand something to defendant and he handed something to her. She got into defendant's cab and he drove, followed by Pates, to 45th and Woodlawn. There, she was let out of defendant's cab and returned to Pates' car where she handed him five tinfoil packages of white powder. He made a field test of the powder which indicated the presence of heroin. Pates, with Miss Lumpkin, followed defendant to his house at 43rd and Langley where, after a wait of about ten minutes, Pates knocked on defendant's door, announced his office, and made the

arrest. Defendant's hands showed traces of powder when Pates shone his fluorescent light upon them. A search of the room revealed thirty dollars of the prerecorded and marked money. Defendant told Pates at the time of the arrest that "he was selling narcotics because he was trying to buy a new cab."

Miss Lumpkin was a narcotics addict and a paid police informer. Pates customarily gave her money from time to time, and had given her money for her service in regard to the offense charged here.

*Capon Washington,* defendant.

In the two-month period preceding the day of the offense, he had been seeing Miss Lumpkin socially three or four times a week. He met her at about 11:00 p. m. on September 22, 1964, in response to her call. She was in a sweat and "looked frantic." She said she needed some dope. At first he refused to help, but upon recognizing how ill she was, he agreed to aid her. He went to 47th Street where a dope addict referred him to a man known as Billy Williams. Williams sold defendant a "package" for thirty dollars, and defendant returned to Miss Lumpkin and presented her with the package. He then drove to her requested destination and she got out of the cab. At that time she gave him thirty dollars. He went back to the cabstand until 3:30 or 4:00 o'clock, got tired and went to his home. He undressed and relaxed for about an hour when Officer Pates appeared at his door.

Defendant denied his guilt and further denied making a statement to Pates that he was selling narcotics to earn money for a new cab.

OPINION

(1) Defendant contends that the evidence established the defense of entrapment as a matter of law, relying principally upon Sherman v. United States, 356 US 369, and Sorrells v. United States, 287 US 435. Entrapment

167

was clearly recognized as a defense in Sorrells, where the court stated that for entrapment to exist, the idea of the offense must have originated in the mind of a government agent without whose trickery, persuasion, or fraud the defendant would not have committed the offense. In Sherman, the opinion of the court reaffirmed the theory of Sorrells to the effect that the function of law enforcement "does not include the manufacturing of crime." The court raised a caveat, however, when it said (at page 372) that, "[t]o determine whether entrapment has been established, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal."

Four justices concurred in the Sherman result as expressed in the opinion of the court, but considered that the Sorrells theory was unsound. Speaking through Mr. Justice Frankfurter, they were of the opinion that the nub of entrapment was whether the facts of the particular case revealed that police conduct had achieved a level which fell below the standards deemed proper in the exercise of governmental power, and that it was irrelevant to ask in whose mind the intention to commit the offense had been conceived. Defendant in the instant case contends that under either view espoused in Sherman, he was entrapped as a matter of law, but suggests that the Frankfurter view is the more enlightened approach. We are not at liberty to consider this latter view, however, since in Illinois our legislature has declared the public policy in this regard, defining entrapment as follows:

> A person is not guilty of an offense if his conduct is incited or induced by a public officer or employee, or agent of either, for the purpose of obtaining evidence for the prosecution of such person. However, this Section is inapplicable if a public officer or employee, or agent of either, merely affords to such

person the opportunity or facility for committing an offense in furtherance of a criminal purpose which such person has originated. Ill Rev Stats 1963, c 38, § 7–12.

This statute is but a codification of the majority principle found in Sherman, and in the Illinois cases which have expressed the same reasoning. People v. Hatch, 49 Ill App2d 177, 182–183, 199 NE2d 81.

Defendant relies heavily on the Sherman case, arguing that the fact situation there is analogous to the facts before us. In Sherman, a government informer and defendant first met at a doctor's office where both apparently were being treated to cure narcotics addiction. The men exchanged common experiences with each other and, eventually, the informer asked defendant if he was aware of a good source of narcotics. Defendant expressed a reluctance to aid the informer in obtaining the drugs. Only after repeated requests made by the informer on a number of different occasions did defendant agree to share his narcotics source with the informer. Defendant was then arrested, after several small sales of narcotics to the informer. In finding that the defense of entrapment had been established, the court predicated its conclusion on the government informer's reprehensible preying on a narcotics addict who was attempting to rehabilitate himself, and on the fact that numerous requests on separate occasions were necessary to overcome defendant's reluctance to supply the narcotics.

█ In the case at bar there is a conflict in the evidence as to the lapse of time between the moment Miss Lumpkin asked defendant for the narcotics and her receipt of the contraband. According to her testimony, defendant responded to her request without hesitation, and there followed an immediate exchange of a "package" for money. Defendant testified that "[a]t least an hour and a half" elapsed between the time he was asked for

the narcotics and the time he was able to procure them for Miss Lumpkin. Even if we were to accept defendant's version of the facts as true, against the secretive background of the narcotics trade, a ninety-minute interval seems to us a sufficiently short period of time to demonstrate a ready willingness on defendant's part and easy access to unlawful narcotics. People v. Toler, 26 Ill2d 100, 102, 185 NE2d 874, cert den 374 US 813; People v. Gonzales, 25 Ill2d 235, 239, 184 NE2d 833, cert den 372 US 923. Accepting, then, the rule of the Sherman case as the applicable law in Illinois, we find it and other federal cases cited by defendant to be factually distinguishable from the instant case. Morales v. United States, 260 F2d 939 (6th Cir, 1958); United States v. Landry, 257 F2d 425 (7th Cir, 1958). It is also suggested by defendant that Miss Lumpkin's use of her friendship with him to accomplish a purchase of narcotics is conduct equally reprehensible to that which existed in Sherman. An appeal to friendship, however, does not in itself establish entrapment as a matter of law. People v. Lewis, 26 Ill2d 542, 546, 187 NE2d 700; People v. Hall, 25 Ill2d 297, 185 NE2d 143.[2]

Turning to other Illinois cases dealing with the defense of entrapment, we note that People v. Strong, 21 Ill2d 320, 172 NE2d 765, is a case in which entrapment was explicitly shown, but defendant in the instant case admitted in the lower court that the facts in the Strong case are distinguishable. On the other hand, in People v. Hall, supra, the facts were in some respects quite comparable to those in the case at bar. There, a narcotics addict turned police informer was acquainted with defendant and deceived him by telling the fictitious story that he needed narcotics for himself and the sick wife of a

---

[2] Henderson v. United States, 261 F2d 909 (5th Cir, 1958), cited by defendant, appears to reach an opposite conclusion, but, as indicated, this view runs counter to the Illinois decisions on this point.

friend. The defense of entrapment was not allowed, the court stating at page 301:

> Except for defendant's claim that he succumbed to a sympathetic appeal to aid two narcotics addicts who were sick, the case is no different from numerous others in which informers have been utilized and the defense of entrapment has been held not to lie. [Citing cases.] However, by defendant's own testimony, it appears that no undue, prolonged or persistent pressures were exerted against him, such as was true in Sherman v. United States, . . . .

██ ██ Defendant emphasizes the fact that his only prior criminal record was a conviction in 1943 for assault with a deadly weapon, and that there is no evidence that he was previously involved in narcotics. It is settled, however, that while a defendant's past history may be a relevant consideration in determining whether there has been entrapment, it is not controlling. People v. Wells, 25 Ill2d 146, 149, 182 NE2d 689. Similarly, defendant's initial or temporary reluctance to enter into a narcotics transaction has not been deemed determinative. In People v. McSmith, 23 Ill2d 87, 94, 178 NE2d 641, the evidence showed that defendant on two separate occasions disclaimed any knowledge of where narcotics could be obtained, but on the third meeting accepted cash from the informer and sold the narcotics. The court found "that by his [defendant's] denials he sought no more than to exhibit the natural caution and hesitancy that could be expected from one engaged in the illegal narcotics trade." The instant defendant has not, in our opinion, presented as strong a case as that in McSmith.

██ The narrow scope accorded the defense of entrapment in Illinois does not permit us to find that it was available to defendant in this case. People v. Hatch, 49 Ill App2d 177, 183–184, 199 NE2d 81.

171

(2) Defendant next contends that there is no evidence in the record that the package which defendant transferred to Barbara Lumpkin contained a narcotic drug, because of a gap in the stipulation concerning the testimony of a Crime Laboratory chemist as to heroin analysis. The State would concede this to be a valid point if proof of narcotic content were limited to the stipulation. People v. Judkins, 28 Ill2d 417, 420–421, 192 NE2d 848. But it is not. Defendant's testimony at the trial produced several admissions on this subject. He stated that he told Billy Williams that he "needed some dope." He then related that Williams gave him a package and that he gave the same package to Barbara Lumpkin. Defense counsel concluded his direct examination of defendant with the following questions:

> Defense counsel: Have you ever been arrested or convicted of any narcotics violation before this time?
> Defendant: No, never.
> Defense counsel: Is this the only time you ever sold any dope at all?
> Defendant: I didn't sell it. I bought it for this girl.
> Defense counsel: Is this the only time you have ever been involved in dope at all?
> Defendant: Yes.
> Defense counsel: No further questions.

On cross-examination, we find this revelation by defendant:

> State's Attorney: You state Barbara came in and told you she was sick and she was holding her stomach and you went out and you bought *narcotics* from Billie Williams and brought the *narcotics* back and gave them to Barbara and you got thirty dollars from Barbara, right? (Emphasis supplied.)
> Defendant: Yes.

Further, as mentioned earlier in this opinion, there was the testimony of Officer Pates that at the time of defendant's arrest he had admitted that he was "selling narcotics" to buy a new cab.

██ It is clear from the above that defendant was prepared to, and did in fact, rest his case solely on the issue of entrapment. As an experienced defense lawyer, counsel was doubtless aware of a line of decisions establishing the rule that the defense of entrapment is incompatible with a claim that the defendant did not commit the acts constituting the offense charged in the indictment. People v. Realmo, 28 Ill2d 510, 512, 192 NE2d 918; People v. Johnson, 24 Ill2d 195, 197–198, 181 NE2d 164; People v. Van Scoyk, 20 Ill2d 232, 235, 170 NE2d 151. The defense of entrapment, which was the only defense interposed at the trial of this case, loses all its meaning unless it is bottomed on admission of the acts charged. A defendant must be considered as having admitted commission of the acts involved in the offense charged when he invokes the defense of entrapment. United States v. Georgiou, 333 F2d 440 (7th Cir, 1964).

██ Also of interest, in answer to defendant's argument about a proof gap, are two cases in which the type of evidence was quite similar to that in the present case, and was held sufficient even without the point relating to inconsistency of the entrapment defense. We refer to People v. Harrison, 26 Ill2d 377, 379–380, 186 NE2d 657, cert den 373 US 928; and People v. Garcia, 52 Ill App2d 481, 488, 202 NE2d 269. We are satisfied that in the case before us there was sufficient evidence to prove the sale of a narcotic drug beyond a reasonable doubt.

██ (3) Defendant also contends that reversible error occurred when the trial court sustained an objection to defense counsel's request that Barbara Lumpkin remove her coat and exhibit her arm. Prior to this request Miss Lumpkin had testified that she had not used narcotics in the previous six months. Generally, defense

173

counsel should be given wide latitude on cross-examination to employ any proper method to attack the credibility of a State's witness. People v. Lewis, 25 Ill2d 396, 185 NE2d 168; People v. Morris, 30 Ill2d 406, 409, 197 NE2d 433; People v. Soto, 64 Ill App2d 94, 99, 212 NE2d 353. In Lewis, one Dantzler, a police informer, made a controlled purchase of narcotics from defendant. Dantzler testified, on direct examination, that formerly he had been a narcotics addict, but that he had not used the drug for a month before the offense nor in the six-month period preceding the date of trial. On cross-examination defense counsel asked Dantzler to remove his coat so that his arm might be examined for indications of narcotic use. The prosecutor's objection to this request was sustained, however. Such a restriction on cross-examination was held to be reversible error, the court stating at page 399:

> Dantzler was the principal witness for the State and *the judgment of conviction must stand or fall upon the credibility of his testimony*. The defendant was therefore entitled to attack the credibility of Dantzler by any legitimate method, and in our opinion the refusal of the trial court to compel Dantzler to exhibit his arm foreclosed an attack upon his credibility on the ground that he was currently a narcotics addict. In our opinion this error is of sufficient magnitude to require a reversal of the judgment of conviction. (Emphasis supplied.)

■■■■ Assuming that the court below erred in foreclosing defense counsel's attempt to impeach Barbara Lumpkin by revealing her to be a current narcotics addict, it would not constitute ground for reversal unless, as pointed out in the quotation from the Lewis opinion, the State's case would necessarily stand or fall on the testimony of this witness. The question then becomes whether or not the judgment of the trial court can be

supported by other testimony in the record. People v. Westbrook, 56 Ill App2d 60, 69, 205 NE2d 511. We believe it can.

Barbara Lumpkin's testimony may be viewed as affecting two issues in this case. We decided, under our analysis of the question of entrapment, that even if we were to accept defendant's version of the facts, there would be no validity to the defense of entrapment. Consequently, the credibility of Barbara Lumpkin's testimony bearing on that issue is not decisive. As to the question of whether defendant transacted a sale of a narcotic drug, we conclude that there is sufficient evidence in the record independent of Barbara Lumpkin's testimony, to establish defendant's guilt beyond a reasonable doubt. It is our decision, therefore, that any undue limitation there may have been on the cross-examination of this witness had no essential bearing on the outcome of the case and, thus, would not constitute reversible error.

 (4) Finally, defendant urges reversal on the ground that the trial court permitted one police officer (Pates) to remain in the courtroom throughout the trial, in spite of defense counsel's motion that all witnesses be excluded. It is now settled that the authority to exclude witnesses reposes in the sound discretion of the trial court. People v. Miller, 26 Ill2d 305, 307, 186 NE2d 317; People v. Mack, 25 Ill2d 416, 422, 185 NE2d 154; People v. Jackson, 58 Ill App2d 302, 208 NE2d 385. We consider the practice followed in this case to have been customary and proper, and it is only where there is a clear abuse of such discretion that a reviewing court will reverse on this ground. People v. Dixon, 23 Ill2d 136, 140, 177 NE2d 206. Defendant takes the unique position, however, that the recently enacted Code of Criminal Procedure has withdrawn this discretion from the trial court, and that it is now mandatory for the judge to comply with a defendant's request to exclude all witnesses. Ill Rev Stats 1963, c 38, § 109–3(c). Defendant has apparently failed

175

to notice that this section of the statute is instructive only on the matter of preliminary examination and has no application to trials.

DECISION
The judgment of the Circuit Court is affirmed.

Affirmed.

DRUCKER and McCORMICK, JJ., concur.

