STATE, Respondent v. NELSEN, Appellant

(228 N.W. 2d 143)

(File No. 11409. Opinion filed March 26, 1975)

John R. Kabeiseman, Brady, Kabeiseman, Light & Reade, Yankton, for defendant and appellant.

Robert A. Wichser, Asst. Atty. Gen., Pierre, on the brief, Kermit A. Sande, Atty. Gen., Pierre, Larry F. Hosmer, State's Atty., Yankton, for plaintiff and respondent.

WINANS, Justice.

Defendant-appellant was charged with three counts of unlawfully distributing a controlled substance, Lysergic Acid Diethylamide (LSD), on three separate occasions in July of 1972.

The State's primary witness, Keith Brown, a paid undercover agent, testified that he had purchased LSD from Defendant on July 12, 15 and 17 of 1972. He had come to Yankton, South Dakota in June, at the request of local authorities to investigate drug abuse and related activities in Yankton County. The arrest of Appellant resulted from this investigation.

Mr. Brown's activities were supervised by Sheriff F. L. Scott of Yankton County and Special Agent Patterson of the Division of Criminal Investigation. After purchase the LSD was turned over to Agent Patterson (DCI) who delivered it to Assistant State Chemist, Donald Frasch. Mr. Frasch testified at trial that chemical analysis of the substances disclosed that all three contained LSD. In addition, Brown, the undercover agent, identified State's exhibits one, two and three as the purchased substances which he had conveyed to Agent Patterson, DCI.

Upon return of a verdict of guilty on all three counts of Distribution or Dispensing a Controlled Substance the Defendant was sentenced to the State Prison for a three-year term on each of the three counts, the terms to run concurrently.

Appellant maintains the charge, as contained in the complaint, was inadequate to apprise him of what he was charged with. He states that an injustice was worked on him because he could not exactly ascertain the nature of his alleged criminal conduct. Although ambiguous, we interpret "injustice" to mean that Appellant contends that he was deprived of due process of law by not being fully informed of the particular offense charged.

The complaint alleged that Appellant on three separate occasions did "willfully, unlawfully and feloniously, distribute or

dispense a controlled substance, to-wit: Lysergic acid diethyla-
mide, * * * all in violation of SDCL 39-17".

Our State Constitution declares that:

"In all criminal prosecutions the accused shall have
the right * * * to demand the nature and cause of
the accusation against him, to have a copy thereof".
Art. VI, Sec. 7 (Bill of Rights)

To effectuate this provision of our Constitution it is provided by
statute that:

"The indictment or information is sufficient if it can
be understood therefrom:

* * * * * *

(6) That the offense charged is designated in such a
manner as to enable a person of common understanding
to know what is intended." SDCL 23-32-12(6)

■ The other half of the constitutional standard imposed by
due process requirements is that the complaint must inform what
offense is charged with reasonable certainty:

"An information must apprise a defendant with
reasonable certainty of the accusation against him so
that he may prepare his defense and plead the judgment
as a bar to subsequent prosecution for the same offense."
State v. Long, 1971, 85 S.D. 431, 185 N.W.2d 472, 477.

■ Does the complaint before us pass the test of allowing "a
person of common understanding" to know with "reasonable
certainty" what he is charged with? Appellant asserts that the
complaint is defective because in it he is charged alternatively
with distributing or dispensing a controlled substance. Thus, he
contends that the complaint is unclear as to what exactly is
charged against him. This court cannot agree. Distributing is
defined as the delivery (transfer) of a controlled drug to another,
while dispense means to deliver (transfer) a controlled drug to the
ultimate user. See SDCL 39-17-44(6), (7), (8). Whether or not the

undercover agent in the instant case ingested the LSD is of incidental importance. The statute prohibits either distributing or dispensing. See SDCL 39-17-88. The criminal conduct is complete upon transfer. Delivery is the offensive act and not the later ingestion of the substance by the buyer. Dispensing and distributing, therefore, are not mutually exclusive offenses because they involve the same conduct on the part of a defendant leading to a violation of statute. The conduct involved in dispensing or distributing diverges only after the forbidden transfer has occurred.

■ We, therefore, hold that the State's charge against Appellant of distributing or dispensing a controlled substance did not confuse him as to the nature of his alleged offense. Rather, the complaint apprised Appellant of the charge with that preciseness required to satisfy due process.

The Defendant further contends that the trial court erred in refusing to give Defendant's proposed instruction pertaining to the defense of entrapment. This defense has been defined by this Court as:

"[T]he inducement of one to commit a crime not contemplated by him for the mere purpose of instituting criminal proceedings against him." State v. Williams, 1970, 84 S.D. 547, 551, 173 N.W.2d 889, 891.

■ If an alleged offender is apprehended by use of undercover agents, the entrapment defense is applicable:

"When the criminal design originates, not with the accused, but is conceived in the mind of the government officers, and the accused is by persuasion, deceitful representation, or inducement lured into the commission of a criminal act". Sorrells v. United States, 1932, 287 U.S. 435, 445, 53 S.Ct. 210, 214, 77 L.Ed. 413, 418.

■ In State v. Williams, supra, this Court adopted the Sorrell's majority test for entrapment which seeks to determine where the intent to commit the crime originated. Under the "origin of intent" test it is the jury's duty to decide whether the

defendant was predisposed to commit the crime. In other words, does the evidence show that the criminal intent is traceable to the defendant or to the Government Agent? Where the genesis of the intent to commit the criminal act is in the mind of the Government Agent "and the accused is by persuasion, deceitful representation, or inducement lured into the commission of a criminal act" entrapment is established. If, however, the defendant was predisposed to commit the crime when encouraged to do so by an agent, the defense will fail because there is no entrapment when agents merely offer the defendant an opportunity to commit the offense. State v. McGranahan, 1973, Iowa, 206 N.W.2d 88; Wood v. United States, 10 Cir., 317 F.2d 736. See also Annot. 33 A.L.R.2d 883. Thus, to decide this issue the subjective intent of the defendant should be focused on by the jury, to-wit, was he intent on performing the criminal act with the police only furnishing him an opportunity, or was he an innocent person lured into committing a crime.

The entrapment defense is soundly grounded in public policy. According to the majority's position in Sorrells:

> "The defense is available, not in the view that the accused though guilty may go free, but that the government cannot be permitted to contend that he is guilty of a crime where the government officials are the instigators of his conduct." Sorrells v. United States, supra, 287 U.S. at 452, 53 S.Ct. at 216.

■ If entrapped, the defendant is found not guilty for the reason that he has violated no statute "because it cannot be supposed that the Congress intended that the letter of its enactment should be used to support such a gross perversion of its purpose." Sorrells, supra, at 452, 53 S.Ct. at 216. The entrapped defendant is, therefore, innocent of the crime charged.

■ There are two components required to successfully establish an entrapment defense: defendant must show police inducement to commit the crime, and that prior to this inducement he was not predisposed to commit the criminal act.

How is defendant's predisposition or lack of it to be proven at trial? In State v. Williams, supra, this Court specifically

reaffirmed language in Sorrells that defendant, "cannot complain of an appropriate and searching inquiry into his own conduct and predisposition". In pursuit of this "searching inquiry" the federal courts allow the prosecution to introduce evidence of prior criminal conviction and criminal reputation to show a preexisting criminal in.....t. See Sherman v. United States, 1958, 356 U.S. 369, 375, 78 S.Ct. 819, 2 L.Ed.2d 848.

In United States v. Russell, 1973, 411 U.S. 423, 433, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366, 374, the Supreme Court stated that "the defense (of entrapment) is not of a constitutional dimension". This Court is free, therefore, to select its own standards for this defense. Because the prejudicial effect of evidence of prior convictions or criminal reputation is devastasting, far outweighing its probative value; and because this Court believes that the defendant should be tried for his present conduct, and not on the basis of past crimes, evidence of prior convictions should not be introduced on the issue of predisposition. As stated by Justice Frankfurter, . "Past crimes do not forever outlaw the criminal." Sherman v. United States, supra, 356 U.S. 369, at 383, 78 S.Ct., 819, at 826.

In espousing this approach we join the Supreme Court of California which stated that:

> "[E]vidence that defendant had previously committed similar crimes or had the reputation of being engaged in the commission of such crimes or was suspected by the police of criminal activities is not admissible *on the issue of entrapment.*" (emphasis supplied) People v. Benford, 1959, 53 Cal.2d 1, 11, 345 P.2d 928, 935.

It is important to note that evidence of prior convictions or criminal reputation *should be admitted* if it is admissible on independent grounds. The entrapment defense may not be used as a shield to prevent the admission of evidence admissible upon grounds unrelated to the defense. As stated by the court in People v. Marshall:

> "[T]he rule does not bar evidence of other crimes if admissible upon grounds unrelated to that defense. (entrapment) * * * To hold otherwise would permit a

defendant to bar evidence, independently relevant, merely by claiming entrapment." (1964) 226 Cal.App.2d 243, 245, 37 Cal.Rptr. 887, 888.

■ An examination of the particular facts surrounding the transaction in question is adequate to disclose whether a defendant had a preexisting criminal intent. Several definite criteria, among others, are available to aid in making this determination.[1] Did the defendant first suggest the crime?[2] How ready was the defendant to commit the crime?[3] Ready response to police inducement is certainly indicative of a predisposition to commit a criminal act. How familiar was the defendant with the criminal activity?[4] Was defendant in possession of a large supply of illegal contraband prior to the alleged entrapment?[5] Did defendant have ready access to the contraband?[6] Was he able to collect a large quantity of contraband in a short time?[7] In addition, the defendant's in-court testimony and admissible out-of-court statements should, of course, be examined if relevant to the origin of his intent.

■ The foregoing criteria are designed mainly to locate intent in the defendant. There are, however, methods which when employed by government agents may indicate that the defendant was lured by them into the crimes' commission. Decisions on entrapment have dealt with four principal inducements which may locate the intent in the government rather than the accused: appeals to friendship, sympathy, offers of excessive amounts of money, and appeals to the narcotic's need. In

---

1. For a helpful discussion and collection of intent locating criteria see: Dowler and Duncan, The Defense of Entrapment In California, 19 Hast.L.J. (1968); and Bancroft, Administration of the Affirmative Trap and the Doctrine of Entrapment, 31 U.Chi.L.Rev. 137 (1963).

2. See People v. Sweeney, 55 Cal.2d 27, 9 Cal.Rptr. 793, 357 P.2d 1049.

3. See People v. Harris, 210 Cal.App.2d 613, 26 Cal.Rptr. 850.

4. See People v. Neal, 120 Cal.App.2d 329, 261 P.2d 13.

5. See People v. Diaz, 206 Cal.App.2d 651, 24 Cal.Rptr. 367.

6. See People v. Burnett, 204 Cal.App.2d 453, 22 Cal.Rptr. 320.

7. See People v. Neal, 120 Cal.App.2d 329, 261 P.2d 13.

addition to showing such inducements the defendant must also show that "undue, prolonged or persistent pressures were exerted against him, * * * that this inducement was dangled in front of him". People v. Hall, 25 Ill.2d 297, 185 N.E.2d 143, 145, or that he was "played upon", People v. Gonzales, 25 Ill.2d 235, 184 N.E.2d 833, 834.

A threshold question which must be answered before the merit of the instant contention is reached is "whether the defense of entrapment is available to a defendant who denies that he committed the offense charged". Williams, supra, 173 N.W.2d at 892. The Williams court was not confronted with that question. Defendant in the instant case, however, pled not guilty and also offered an entrapment defense, thus raising the issue.

In Sorrells v. United States, supra, 287 U.S. 435, 452, 53 S.Ct. 210, 216, the United States Supreme Court held that an entrapment defense and a plea of not guilty are not mutually exclusive. Even though defendant's conduct fits the crime charged he may still be not guilty. Chief Justice Hughes stated:

> "[T]he government cannot be permitted to contend that he is guilty of a crime where the government officials are the instigators of his conduct."

The court in Hansford v. United States, 1962, 112 U.S.App. D.C. 359, 303 F.2d 219, 221, held:

> "The defenses were alternative but not inconsistent. It was consistent with defendant's denial of the transaction to urge that if the jury believed it did occur the government's evidence as to how it occurred indicated entrapment."

Further, in People v. Perez, 1965, 62 Cal.2d 769, 44 Cal.Rptr. 326, 329, 401 P.2d 934, 937, Chief Justice Traynor of the California Supreme Court, speaking for a unanimous bench, stated:

> "We disagree with the Attorney General's contention that to invoke the defense of entrapment a defendant

must admit committing the criminal acts charged. * * * it does not follow, that the defendant must admit guilt to establish the defense. A defendant, for example, may deny that he committed every element of the crime charged, yet properly allege that such acts as he did commit were induced by law enforcement officers. * * * Moreover, a defendant may properly contend that the evidence shows unlawful police conduct amounting to entrapment without conceding that it also shows his guilt beyond a reasonable doubt. When the evidence does show such conduct, the court has a duty to root its effects out of the trial * * *."

■ To hold that a defendant must plead guilty to utilize an entrapment defense would be to equate participation in a course of conduct with legal guilt. We, therefore, hold that the defense may be used in conjunction with a not guilty plea.

We finally reach the precise question presented by appellant's contention, to-wit, was the trial judge justified in not giving an instruction on entrapment? In deciding this question three rules are relevant:

■ First, where the evidence is in conflict as to the origin of the intent to commit the offense the question of entrapment should go to the jury. State v. Williams, 84 S.D. 547, 173 N.W.2d 889. This rule is cited with approval in State v. Shearer, 86 S.D. 711, 201 N.W.2d 180.

■ Secondly, as previously stated, there is no entrapment when narcotics agents merely offer the defendant an opportunity to commit the offense. State v. McGranahan, supra; Wood v. United States, supra; 33 A.L.R.2d 883.

■ Finally, the mere offer to purchase made by an undercover agent does not constitute entrapment. People v. Jones, 48 Mich.App. 334, 210 N.W.2d 396; Sherman v. United States, supra.

Applying these precedents to the record of the instant case discloses that there is no conflict as to where the intent to commit the crime of distributing a controlled substance arose. The record evidences no undue police instigation.

 Petitioner was charged with and convicted of distributing a controlled substance on three separate and distinct occasions. Taken from the direct examination of Undercover Agent Brown by State's Attorney Hosmer, these distributions occurred in the following manner.

The first distribution: [8]

"Q. Tell us what happened next?

A. At approximately 6:40 p.m. Mr. Nelson asked me if I would help him out and buy some acid.

 * * * * * *

Q. * * * How did you respond to his question about purchasing acid?

A. I asked him how much he wanted for it.

Q. What, if anything, did he say?

 * * * * * *

A. He told me he had mescaline and acid and that for $5.00 I could have one of each."

It is clear that the intent to commit the crime originated with defendant. The agent did nothing more than present an opportunity for defendant to carry his intent through to fruition.

The second distribution:

"Q. Would you tell us what the circumstances were concerning your meeting him (defendant)?

A. Mr. Nelson told me that he was going to purchase some acid and ask(ed) if I would like for him to get me some.

 * * * * * *

―――――――――
8. "Distribute" means to deliver a controlled drug or substance; "deliver" means the actual, constructive or attempted transfer of a controlled drug or substance. SDCL 39-17-44.

> Q. Now was there any conversation between you and him concerning acid before that statement was made?
>
> A. I don't believe so."

The third distribution occurred in the lobby of the Agent's hotel:

> "Q. Will you tell us what ensued when he sat down?
>
> A. He asked me if I would help him out as he had some acid he needed to sell because he needed some money."

Petitioner contends that the record contains no evidence of defendant's predisposition to commit the crime. The foregoing excerpts from the record plainly indicate that such was not the case. It was stated by Chief Justice Warren that "a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal." Sherman v. United States, 356 U.S. 369, 372, 78 S.Ct. 819, 821. In this case it is clearer than usual that government agents did not engage in entrapment; they merely sprung a trap on an unwary offender.

Appellant's final contention is that Keith Brown, the undercover agent, is an accomplice of defendant in the commission of this crime so as to require the corroboration of his testimony.

Appellant directs us to State v. Johnson, 81 S.D. 600, 606, 139 N.W.2d 232, 236 which held, "An accomplice is one who is liable to prosecution for the identical offense charged against the defendant * * *." Under this standard it is contended that Brown is an accomplice.

SDCL 23-44-10 provides:

> "A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof."

If Brown is an accomplice, his testimony would be insufficient for a conviction.

 Two statutes in SDCL Chap. 39-17, Drugs and Substances Control, evidence that Agent Brown was acting in a legal capacity and not as defendant's accomplice.

SDCL 39-17-120 provides:

"Funds established pursuant to § 39-17-119 may be expended confidentially for the purpose of making purchases and acquisitions of drugs and substances which are illegal under this chapter, when such purchases are necessary to obtaining convictions under this chapter."

SDCL 39-17-121 provides:

"Funds established pursuant to § 39-17-119 may further be expended confidentially to employ special agents, pay their salaries and expenses, for the purpose of providing undercover assistance to local law enforcement officials in gathering evidence of violations of this chapter, making arrests thereunder, and obtaining convictions."

Pursuant to the foregoing statutes purchases of illicit drugs may be made by undercover agents for the purpose of gathering evidence of violations of Chapter 39-17. Under the standard enunciated by this Court in Johnson, supra, Brown was not an accomplice because he was authorized by statute to make the purchases which he did.

Affirmed.

DUNN, C. J., and DOYLE, J., concur.

WOLLMAN, J., concurs specially.

COLER, J., joins in special concurrence.

WOLLMAN, Justice (concurring specially).

Although I agree that defendant's conviction should be affirmed, I believe that there is merit in defendant's contention that the information charged two separate offenses.

SDCL 39-17-44 provides that:

"* * * (6) 'Deliver' or 'delivery' means the actual, constructive, or attempted transfer of a controlled drug or substance whether or not there exists an agency relationship.

"(7) 'Dispense' means to deliver a controlled drug or substance to the ultimate user or human research subject, including the packaging, labeling, or compounding necessary to prepare the substance for such delivery, and a 'dispenser' is one who dispenses.

"(8) 'Distribute' means to deliver a controlled drug or substance. 'Distributor' means a person who delivers a controlled drug or substance. * * *

"(17) 'Practitioner' means a doctor of medicine, osteopathy, podiatry, dentistry, or veterinary medicine licensed to practice their profession, or pharmacists licensed to practice their profession; physician's assistants. certified to practice their profession; government employees acting within the scope of their employment; and persons permitted by certificates issued by the department to distribute, dispense, conduct research with respect to, or administer a substance controlled by this chapter. * * *

"(20) 'Ultimate user' means a person who lawfully possesses a controlled drug or substance for his own use or for the use of a member of his household or for administration to an animal owned by him or by a member of his household."

SDCL 39-17-80 provides that:

"Practitioners shall be registered to dispense substances in Schedules II through IV if they are authorized to dispense under the law of this state."

SDCL 39-17-88 provides that:

"Except as authorized by this chapter, it shall be

unlawful for any person to manufacture, distribute, *or* dispense a substance controlled under this chapter, or to possess with intent to manufacture, distribute, *or* dispense, a substance controlled under this chapter." (emphasis added)

It seems obvious to me that the legislature intended that the unlawful distributing and dispensing of controlled substances should be considered as separate offenses, designed to prohibit different types of criminal activity. From the context of the statutes, it would appear that the prohibition against unlawful distribution was designed to apply to situations such as defendant's case, whereas the prohibition against unlawful dispensing was designed to reach those cases in which a person otherwise entitled to lawfully deliver a controlled drug to an ultimate user did so under circumstances making such dispensing unlawful.

Although the information was probably technically defective, defendant did not demur to it on the ground that it stated more than one offense, as he was entitled to do under SDCL 23-36-8(3). I would hold that he thus waived any objection to the information on that ground. State v. Hanson, 54 S.D. 267, 223 N.W. 55. Moreover, the court's instructions, though certainly not a model to be followed in other drug cases, substantially instructed the jury that defendant was being charged with the unlawful distribution of a controlled substance.

I agree with the majority opinion that the trial court did not err in refusing to give an instruction on entrapment. The record discloses that there was no evidence that the state's undercover agent had in any manner attempted to entrap defendant. Because this is the sole issue that we need to decide regarding the question of entrapment, I do not join in the remainder of the majority opinion's advisory statements regarding the entrapment defense. There will be time enough to deal with these questions when they are properly presented to us.

I agree with the majority opinion's holding that the state's undercover agent was not an accomplice.

I am authorized to state that Justice COLER joins in this special concurrence.